**CROWN LIFE INSURANCE COMPANY, Appellant,**

v.

**RELIABLE MACHINE AND SUPPLY CO., Inc., Appellee.**

**No. 11584.**

Court of Civil Appeals of Texas.

Austin.

April 3, 1968.

Rehearing Denied April 24, 1968.

Coleman Gay, Joseph Latting, Austin, for appellant.

John S. Wade, Harold L. Coit, Austin, for appellee.

PHILLIPS, Chief Justice.

This was a suit on an insurance policy for $50,000 issued by appellant, The Crown Life Insurance Company, on the life of James Fields Leach. Leach owned the majority of the capital stock of appellee, Reliable Machine and Supply Co., Inc., and was one of its officers. The corporation was the beneficiary under the policy. The principal question before us is whether the policy had lapsed due to nonpayment of premiums or whether appellee was entitled to credit for money entrusted to one Marini who failed to pay the premiums to appellant, having appropriated the money to his own use.

James Fields Leach owned 56% of the stock of Reliable Machine and Supply Co., Inc., when the stockholders decided to procure insurance on the lives of its officers. Leach desired to give the insurance business to one Gerard T. Marini with whom he had had satisfactory dealings in the past. Marini was summoned from Houston to Odessa where he not only procured

applications for the insurance but was instrumental in formulating a stockholders' agreement.

Marini was an agent for Sun Life Assurance Company and wrote insurance on four of appellee's officers in that company. Sun Life Assurance Company was unwilling to write insurance on the life of Leach; consequently, Marini placed the insurance on Leach with appellant.

Appellee paid the initial premium on Leach's policy of $1,733 by check payable to Marini and received in return a receipt from Crown. Thereafter, appellee made periodic payments by check payable to Marini, aggregating $8,252.56, with the last such payment being made by check dated July 7, 1960, in the amount of $494.65. Crown admitted that if it had received all of these payments that the policy would have been in force on the date of Leach's death, November 12, 1962, and would have had a value on this date of $45,464.67. Evidently, Crown did not receive all of these payments; however, they received some twenty-one payments aggregating $5,068 with the last payment received on April 12, 1959.

Appellant contends that the policy lapsed prior to Leach's death and that appellee should be estopped from prosecuting its claim.

In a trial to the court, judgment was rendered in appellee's favor for $70,104.80, which included penalty of $5,455.76, an attorney's fee of $10,014.97 and interest of $9,169.40. The trial court filed findings of fact and conclusions of law.

We affirm.

█ Appellant is before us on six points of error, the first two points which we will discuss together are the error of the trial court in holding that there was any evidence to support a finding that appellant appointed Gerard T. Marini its agent for collecting premiums on the policy in suit from July 12, 1956, through July 30, 1960; and the error of the trial court in holding

that appellant waived the policy provision that all premiums must be paid at its home office or to a branch office or general agent in exchange for an official receipt.

We overrule these points.

Appellant contends here that Marini was actually the agent for Sun Life Assurance Company, that the policy in question was written for appellant under a "single case" appointment by appellant which gave Marini no authority except to deliver the two policies it described and collect the initial premium thereon. That Marini later received another "single case" appointment from appellant but that he had no business relations with appellant except for the periods from July 11, 1956 to March 31, 1957, and from March 31, 1958 to March 31, 1959.

The trial court, however, found that "Defendant, by its conduct, appointed Gerard T. Marini its agent for the collection of premiums due on its policy No. 723,307 for the period from July 12, 1956, through July 30, 1960, both dates inclusive."

Appellant contests the validity of this finding inasmuch as Marini had been instructed by appellant in writing that "you are not authorized to act for, or as agent for, the Crown Life Insurance Company, or to collect premiums except as stated above." That the policy in question provided "Payment of premiums must be made at the Home Office of the Company or to any branch office or general agent of the Company in the United States of America in exchange for the Company's official receipt bearing the printed signature of the Actuary or Secretary and countersigned by a duly authorized cashier or agent of the Company." Appellant further contends that Marini is appellee's agent in this transaction. We do not agree with these contentions.

Marini was licensed by the Texas Board of Insurance on July 11, 1956, as an agent for Crown. Appellee was not a party to this agency contract and had no knowledge of its contents. In this respect Art. 21.04

of the Texas Insurance Code, V.A.T.S. provides:

"Any person who shall solicit an application for insurance upon the life of another shall in any controversy between the assured and his beneficiary and the company issuing any policy upon such application be regarded as the agent of the company, and not the agent of the insured, but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy."

To the same effect are the provincial laws of Ontario, the domicile of Crown, which provide:

No officer, agent, employee or servant of the insurer or any person soliciting insurance, whether an agent of the insurer, or not, shall to the prejudice of the insured be deemed to be for any purpose whatever the agent of the insured in respect of any question arising out of the contract of insurance. R.S.O.1937, c. 256, s. 144.

The policy provided, "All rights reserved * * * under the policy to be owned exclusively by Reliable Machine & Supply Co., Inc., 2035 West 2nd Street, Odessa, Texas, to whom the policy, receipts, and notices are to be sent." The president of the appellee and his secretary both testified that, contrary to this policy provision, no premium notices were received in Odessa but that they were sent to appellant's general agent, one Cohen whose place of business was in Houston.

Appellant's general agent in a letter written in November, 1960 to appellee, stated, "You will also appreciate the fact that when these policies were placed with our company through Mr. Marini for consideration that he was to handle payment of your premiums with Sun Life, Crown Life and various others and that all premium notices were to go to him. Thereafter, until premium payments ceased, Mr. Marini brought monthly premium payments to us in cash, or his personal check to our office, usually on the last day of grace, and picked up premium notices for the next payment of that time. Several letters were written to Mr. Marini, and yourself in his care as to the status and method of reinstating, but with no results."

Consequently, any arrangement for Marini to pick up premium notices and receipts was necessarily between Crown Life or its general agent and Marini since the only authorization by appellee was that contained in its application and contract of insurance which required such notices and receipts to be sent to appellee in Odessa. Having thus entrusted Marini with the premium notices and receipts over a protracted period of time, contrary to the express policy provisions, the appellant must bear the loss that followed through Marini's defalcation.

At no time prior to November 16, 1960, did any officer, employee, or agent of appellant other than Marini have any contact with appellee or any of its officers or employees. Appellant can function only through agents and its agent in this case was Marini. Appellant clothed him with all indicia of agency. He was given printed sales materials relating to appellant's policies, he was paid a commission for selling the policy in the suit at bar, and he was delivered premium notices for collection and finally appellant was still attempting to negotiate reinstatment of the policy through Marini in late 1960. At no time did appellant notify appellee of the termination of Marini's agency. Scott v. Law, Union & Rock Insurance Co., 12 S.W.2d 147 (Tex.Comm.App.1929).

Appellant cites Kansas City Life Ins. Co. v. Elmore, 226 S.W. 709 (Tex.Civ.App. Amarillo 1920, no writ) and American National Insurance Co. v. Fox, 184 S.W.2d 937 (Tex.Civ.App. Fort Worth 1944, writ ref'd w. o. m.) for the proposition that when an insured pays a premium to one who is not authorized to receive it, he thereby constitutes such person his agent. Both of these cases were decided since the

enactment of Article 21.04; however, this article is not mentioned in either of the cases and apparently was not argued. Consequently, these cases are not in point.

In Southland Life Insurance Company v. Lawson, 137 Tex. 399, 153 S.W.2d 953, 136 A.L.R. 1212, the Court stated that waiver by custom is but another name for estoppel and can be invoked only where the conduct of the insurer has induced the insured to rely on it and where it would operate as a fraud or injustice to allow the insurer to disavow its waiver and enforce the policy condition. 31 C.J.S. Estoppel § 61, p. 379.

■ There is no doubt that "an insurance company can waive, by custom, the contractual obligation of its insurance policy with reference to the payment of premiums at the home office of the company, etc., and in such cases the insurance company will not be permitted to stand on the insurance contract where to do so would operate as a fraud on the insured or result in an injustice to him." Southland Life Insurance Company, supra.

■ Appellant's third point of error is that of the trial court in holding that Marini had the authority to collect premiums on the policy in advance of their maturity.

We overrule this point.

Appellant cites Bennett v. Royal Union Life Ins. Co., 112 S.W.2d 134 (Kansas City Ct. of Appeals 1938) where the Court held that they would not extend an agent's authority to make collections for his principal four years in advance.

Here the largest prepayment made consists of two-thirds of a year. Whether or not these prepayments constitute an unwarranted extension of the agent's authority presented a question of fact. Inasmuch as appellant requested no findings of fact in this regard, whether or not Marini collected the premiums in advance, is not controlling. Tex.R.Civ.P. 299 states that where findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense. McDonald, in Art. 16.09, Texas Civil Practice, states that where a given theory of recovery or of defense is raised by the pleadings and the evidence, but no one of the findings of fact is referable to such theory, it will on appeal be deemed that such theory has been waived. See Pinson v. Dreymala, 320 S.W.2d 152 (Tex.Civ.App. Houston 1958, writ dism'd).

Appellant's fourth and fifth points of error, briefed together, are that of the court in holding that appellee was not estopped to assert that the policy was in force at date of Leach's death, although appellee and Leach had recognized about 6½ years before suit was filed that the policy had lapsed and had done everything necessary to secure a reinstatement except to pay delinquent premiums and yet had failed to complete reinstatement or to take any action until this suit was filed almost four years after Leach's death; and the further error of the court in finding that appellant was not prejudiced in its defense by appellee's waiting until October 13, 1966 to file this suit.

We overrule these points.

Appellant contends here that the policy in question lapsed on April 25, 1960, that appellee and Leach acknowledged this fact and that they had complied with all of appellant's requirements for reinstatement except the payment of the delinquent premiums thereon, despite such facts; however, they failed to pay any part of such delinquency even though the insured lived approximately two years after complying with the other requirements. That in addition to negotiations between Leach, appellant's general agent in Houston, Marini and appellant itself at its office in Canada, relative to the condition of the policy at the time, Leach wrote to appellant's general agent in Houston asking "Would you please check on the above policies and let me know how much money it will take now to reinstate them, how much in thirty days, including all loans and dividends to make these policies paid up to Jan., 1961."

Appellant contends that Leach accepted the fact that the policy in suit had lapsed and that he did not claim that the policy should be credited with cash entrusted to Marini which appellant never received. In further support of this position appellant asserts that Leach signed an application for reinstatement of the policy in which there was stated, among other things "I, the undersigned, hereby apply to have the above policy, which is now lapsed, reinstated."

In viewing this record as a whole it appears that nothing more than negotiations were in progress from time to time and while an application for reinstatement was submitted by appellant it was, at best, a submission conditioned upon a satisfactory conclusion of the negotiations and not an admission that the policy had lapsed. These parties were dealing at arms length, fully aware of the factors involved. Thus it becomes apparent that negotiations broke down. The conditions were never fulfilled since the fee demanded was never paid nor the policy reinstated.

In this respect there is evidence in the record that Leach was advised by counsel that the policy had not lapsed and that he and other officers of the company were looking to appellant or to Marini to pay up the policy. That they had never absolved appellant of the shortages.

The first element of any estoppel is a false representation or a concealment of material facts. We need go no further than this in the case before us to see that there was no concealment or false representation of any of the facts on the part of appellee here and that it merely enforced a right to which it was legally entitled and to which it had put appellant on notice immediately after Leach's death. Appellant admits that it received a demand letter and Death Certificate from appellee's attorney at Odessa on January 10, 1963. Appellee was not required to take any action at the time of appellant's repudiation of the insurance contract in November, 1960.

When appellant refused to reinstate the policy without the payment of additional premiums and other requirements, appellee could treat such refusal as an anticipatory breach of the contract of insurance. Appellee could have sued at once for the breach or treat the contract as still in force, wait for the time for performance to ripen, then sue for the breach at this time. Universal Life & Accident Ins. Company v. Shaw, 139 Tex. 434, 163 S.W.2d 376.

Appellant's sixth point of error is that of the court in finding that interest began to run on the face amount of the policy thirty days after January 10, 1963.

We overrule this point.

Appellant received a demand letter and Death Certificate from appellee's attorney as stated above. The policy states that appellant will pay the amount due within thirty days of proof of claim and will pay interest on money left on deposit with it.

The judgment of the trial court is affirmed.

Affirmed.