**MBANK ABILENE, N.A. (f/k/a Abilene National Bank), Appellant,**

v.

**WESTWOOD ENERGY, INC., Appellee.**

**No. 11–86–138–CV.**

Court of Appeals of Texas, Eastland.

Dec. 31, 1986.

**248**

Allen W. Kimbrough, Diane K. Lettelleir, Winstead, McGurie, Sechrest & Minick, Dallas, for appellant.

Evans S. Rutledge, Rutledge & Rutledge, Abilene, for appellee.

## Opinion

McCLOUD, Chief Justice.

Westwood Energy, Inc. (formerly known as Wood Enterprises, Inc.) was operator of the Cunningham and the Duncan oil and gas leases in which Stroube Exploration, Inc. (SEI) was a nonoperating, working interest owner. The operating agreements[1] granted Westwood a first and preferred lien against the interest of each party to the operating agreement who failed to pay his share of the lease operating expenses. The agreements also expressly provided that the liens extended to the nonoperator's interest in the oil and gas produced and the proceeds from the sale of such oil and gas. Westwood never recorded the operating agreements.

SEI incurred a debt to Abilene National Bank which is now MBank Abilene, N.A. The deed of trust from SEI to Don Earney, Trustee for Abilene National Bank, listed several leases including the Cunningham and the Duncan leases as security for the indebtedness. As additional security for the payment of the indebtedness, SEI assigned to the mortgagee bank, from and after the date of the deed of trust, all of SEI's interest in the oil and gas produced and sold from the mortgaged property. The deed of trust was dated July 9, 1981,

and was recorded on July 16, 1981. SEI subsequently defaulted on its loan from MBank.

Westwood sued SEI to collect expenses for the operation of the Cunningham and the Duncan leases pursuant to the operating agreements between Westwood and SEI. Westwood also sued MBank Abilene, N.A. and First State Bank, Abilene, Texas, to foreclose contractual liens on the leasehold interests of SEI. MBank counterclaimed for conversion.

In a nonjury trial, the trial court ruled in favor of Westwood. Only MBank appeals. We affirm.

The trial court made findings of fact and conclusions of law. The findings of fact are not challenged; therefore, they are binding and conclusive. *Blanton v. Bruce*, 688 S.W.2d 908 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *City of Fort Worth v. Bewley*, 612 S.W.2d 257 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.).

MBank raises two points of error. In Point of Error No. 1, it claims that the trial court erred in concluding that the unrecorded operator's lien granted to Westwood in each of the operating agreements was first and superior to the lien recorded by MBank. We disagree.

The trial court made the following unchallenged findings of fact with reference to the operating agreements dated January 20, 1978, and August 1, 1979:

5. Terms of both Operating Agreements granted to the operator a first and preferred lien against the interest of each party to the Operating Agreement and against the respective interest of each in oil and gas produced and the proceeds thereof, and upon the respective interest of each in material and equipment on the lease, to secure the payment of that party's share of operating expenses due to the operator.

6. The Operating Agreement authorized the Operator to collect from the oil and/or gas purchaser the proceeds accru-

[1]. The operating agreement for the Duncan lease was dated January 20, 1978. The operating agreement for the Cunningham lease was dated August 1, 1979.

ing to the interest of any working interest owner who is delinquent in paying its proportionate share of the lease operating expense. The Operator is authorized to apply those proceeds against the outstanding account of the delinquent party.

Our Supreme Court in *Westland Oil Development Corporation v. Gulf Oil Corporation,* 637 S.W.2d 903, 908 (Tex.1982), stated the recognized rule with regard to references made in documents appearing in one's chain of title:

It is well settled that "a purchaser is bound by *every* recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims." (emphasis added). *Wessels v. Rio Bravo Oil Co.,* 250 S.W.2d 668 (Tex.Civ.App.—Eastland 1952, writ ref'd). See also *Williams v. Harris County Houston Ship Channel Navigation District,* 128 Tex. 411, 99 S.W.2d 276 (1936); *Texas Co. v. Dunlap,* 41 S.W.2d 42 (Tex.Comm'n App. 1931, jdgmt. adopted); *Guevara v. Guevara,* 280 S.W. 736 (Tex.Comm'n App. 1926, jdgmt. adopted); *Tuggle v. Cooke,* 277 S.W.2d 729 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n.r.e.); *Abercrombie v. Bright,* 271 S.W.2d 734 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.); Lange, Land Titles and Title Examination sec. 816 at 259 (1961). As stated in *Loomis v. Cobb,* 159 S.W. 305 (Tex.Civ.App.—El Paso 1913, writ ref'd),

The rationale of the rule is that *any* description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another, and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of *all the matters referred* to and affecting the estate is obtained.

(emphasis added) 159 S.W. at 307; see also *W.T. Carter & Bro. v. Davis,* 88 S.W.2d 596 (Tex.Civ.App.—Beaumont 1935, writ dism'd).

In the instant case, the trial court also made the following unchallenged finding of fact:

15. Assignments, recorded at Volume 619, page 505, Volume 625, page 777, and Volume 640, page 178, Deed Records of Jones County, Texas are in the chain of title of SEI, First State Bank, Abilene, Texas ... and MBANK Abilene, N.A.... and refer to the Operating Agreements.

An assignment recorded on August 20, 1979, in the Deed Records of Jones County, at Volume 619, page 505, from Stroube Production Company to William P. Stroube et al, stated that it was made subject to an operating agreement dated January 20, 1978, between Stroube Production Company and Wood Enterprises, Inc. An assignment recorded on March 27, 1980, in the Deed Records of Jones County, at Volume 625, page 777, from G. Fred Reiff to Stroube Exploration, Inc., stated that it was made subject to an operating agreement dated August 1, 1979, between G. Fred Reiff and Wood Enterprises, Inc.

MBank attempts to distinguish *Westland* by pointing out that the plaintiffs in that case had introduced evidence that Gulf and Superior actually had a copy of the operating agreement in their own files. The Court in *Westland* stated:

It is not unusual for an operating agreement, as was the case here, to not be placed of record. An entirely different result might obtain on the issue of notice if, upon diligent inquiry and search, Gulf and Superior were simply unable to obtain a copy of the operating agreement. See *Loomis v. Cobb, supra.* However, Gulf and Superior have never contended such was the case, and there is evidence to the effect that Gulf and Superior had a copy of the operating agreement in their files. Therefore, we hold that the reference to the March 1, 1968, operating agreement contained in the May 22, 1973, assignment from Mobil to Gulf and Superior, as a matter of law, charged Gulf and Superior with the duty of inspecting said agreement. As a result, Gulf and Superior were charged

with notice of the November 15, 1966, letter agreement and the equitable claim of Westland, and cannot enjoy the status of innocent purchasers.

MBank did not contend in its pleadings, during trial, or on appeal that it was unable to obtain a copy of the operating agreements.

MBank argues instead that its substitute trustee's deed, dated February 5, 1985, contains no recitals concerning the operating agreements; therefore, it cannot be charged with notice of the operating agreements. MBank cites the case of *Southwest Title Insurance Company v. Woods*, 449 S.W.2d 773 (Tex.1970), to support its position. The *Woods* case held that a party is not charged with constructive notice of a recorded instrument which is not in his chain of title. The trial court found in the instant case, in an unchallenged finding of fact, that the assignments of the Cunningham and the Duncan leases were in the chain of title of MBank.

Under the rule announced in *Westland*, MBank "is bound by *every* recital, reference and reservation contained in or fairly disclosed by *any* instrument which forms an essential link in the chain of title under which he claims." (Emphasis added) *Westland Oil Development Corporation v. Gulf Oil Corporation, supra*. We hold that MBank is charged with notice of the liens contained in the prior unrecorded operating agreements involving Westwood and SEI because these agreements were referred to in instruments which form an essential link in the chain of title under which MBank claims.

TEX.REV.CIV.STAT.ANN. art. 6627 (Vernon 1969) (repealed January 1, 1984), the predecessor to TEX.PROP.CODE ANN. sec. 13.001 (Vernon 1984), stated in part that:

> [A]ll deeds of trust and mortgages shall be void as to all creditors *and* subsequent purchasers for a valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk, to be recorded as required by law. *(Emphasis added)*

MBank contends that a "significant change in the language of Article 6627" occurred when this article was recodified as TEX. PROP.CODE ANN. sec. 13.001(a) (Vernon 1984) to state:

> A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor *or* to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged or proved and filed for record as required by law. (Emphasis added)

MBank argues that "[a]t the time [it] recorded its lien in 1981, it was in the position of a creditor under Section 13.-001(a)." The Property Code was enacted by the 68th Legislature to be effective January 1, 1984. Acts 1983, 68th Leg., p. 3475, ch. 576, sec. 1; See *Medley v. Medley*, 683 S.W.2d 877, 878 n. 2 (Tex.App.—Corpus Christi 1984, no writ). At the time MBank recorded its lien in 1981, Article 6627 was the applicable law. As a general rule, statutes operate prospectively, but they may operate retrospectively when no impairment of vested rights result. *Merchants Fast Motor Lines, Inc. v. Railroad Commission of Texas*, 573 S.W.2d 502 (Tex. 1978); *Cox v. Robison*, 105 Tex. 426, 150 S.W. 1149 (Tex.1912). The retrospective application of Section 13.001(a) in the instant case would impair the vested rights of Westwood under MBank's interpretation of this section. We hold that Section 13.-001(a) is not applicable in the instant case.

Although we adhere to our above holding, we will address MBank's arguments regarding Section 13.001(a).

MBank argues that when applying Section 13.001(a), "issues of constructive or actual notice of an unrecorded conveyance do not arise when the unrecorded conveyances are sought to be asserted against a creditor such as MBank." MBank construes Section 13.001(a) to mean that issues involving notice only arise when a subsequent purchaser is involved and that the statutory change of "and" to "or" changes the law with respect to creditors.

The general rule of statutory construction is that the words "and" and "or" are not interchangeable. *Robinson v. Reliable Life Insurance Company*, 569 S.W.2d 28 (Tex.1978); *Bayou Pipeline Corporation v. Railroad Commission*, 568 S.W.2d 122 (Tex.1978); *Board of Insurance Commissioners of Texas v. Guardian Life Ins. Co. of Texas*, 180 S.W.2d 906 (Tex.1944). In *Board of Insurance Commissioners*, our Supreme Court adopted the following language from 3 C.J.S. *And* sec. 1068 (now 3A C.J.S. *And* sec. 451–453) in stating an exception to the general rule that the words "and" and "or" are not interchangeable:

Nevertheless, in order to effectuate the intention of the parties to an instrument, a testator, or a legislature, as the case may be, the word "and" is sometimes construed to mean "or." This construction, however, is never resorted to except for strong reasons and the words should never be so construed unless the context favors the conversion; as where it must be done in order to effectuate the manifest intention of the user; and where not to do so would render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake.

MBank, thus, interprets the legislature's change of "and" to "or" to be a substantive change and that Section 13.001(a) now means that an unrecorded conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor *who has notice*. This interpretation is contrary to the legislative intent not to make substantive changes in writing the Texas Property Code. TEX.PROP.CODE ANN. sec. 1.001(a) (Vernon 1984) states:

(a) This code is enacted as a part of the state's continuing statutory revision program begun by the Texas Legislative Council in 1963 as directed by the legislature in Chapter 448, Acts of the 58th Legislature, Regular Session, 1963 (Article 5429b–1, Vernon's Texas Civil Statutes). The program contemplates a topic-by-topic revision of the state's general and permanent statute law *without substantive change*. (Emphasis added)

Acts 1983, 68th Leg. p. 3475, 3730, ch. 576 sec. 7; *Medley v. Medley, supra.*

The "Foreword to the Proposed Code," Revisor's Report, January, 1983, by Robert I. Kelly, Executive Director, Texas Legislative Council, also states in part the legislative intent not to make substantive changes:

The Texas Legislative Council is required by law (Article 5429b–1, Vernon's Texas Civil Statutes) to carry out a complete nonsubstantive revision of the Texas statutes. The process involves reclassifying and rearranging the statutes in a more logical order, employing a numbering system and format that will accommodate future expansion of the law, eliminating repealed, invalid, duplicative, and other ineffective provisions, and improving the draftsmanship of the law if practicable—all toward promoting the stated purpose of making the statutes "more accessible, understandable and usable" without altering the sense, meaning, or effect of the law.

*   *   *   *   *   *

The Property Code is a nonsubstantive revision of the Texas statutes relating to real and personal property.

*   *   *   *   *   *

Meticulous care has been taken within the staff to include in the proposed code all source law assigned to the code and to ensure that no substantive change has been made in the law.

*   *   *   *   *   *

In reviewing the proposed code, the reader should keep in mind the following:

*   *   *   *   *   *

(3) This is a nonsubstantive revision. The staff's authority does not include improving the substance of law. The sole purpose of this draft is to compile all the relevant law, arrange it in a logical fashion, and rewrite it without altering its meaning or legal effect. If a particular source statute is ambiguous and the

ambiguity cannot be resolved without a potential substantive effect, the ambiguity is preserved.

MBank's interpretation of Section 13.001(a) would mean that the legislature made a substantive revision of Article 6627 because under case law, a creditor must have had no notice of a prior unrecorded conveyance in order to have a superior claim. See *Anderson v. Casey-Swasey Co.*, 103 Tex. 466, 129 S.W. 349 (1910); *Paris Grocer Co. v. Burks*, 101 Tex. 106, 105 S.W. 174 (1907); *Jensen v. Bryson*, 614 S.W.2d 930, 933 (Tex.Civ.App.—Amarillo 1981, no writ). See also *Texas American Bank/Levelland v. Resendez*, 706 S.W.2d 343 (Tex.App.—Amarillo 1986, no writ).

The Court in *Paris Grocer Co. v. Burks, supra,* 105 S.W. at 175, stated:

> The right of the creditor is purely statutory, and requires nothing but the concurrence of the conditions required by the statute to make it complete. The statute by its terms makes void the unrecorded deed as against "all creditors," but the courts hold this to mean all creditors who have acquired liens without notice of the deed.

We hold that the word "and" is interchangeable with the word "or" as used in the context of Section 13.001(a) because the legislature never intended to make a substantive change of Article 6627 when the Texas Property Code was created.

MBank also argues that the application of the doctrine of "last antecedent" to Section 13.001(a) "requires that the qualifying phrase 'without notice' be applied only to subsequent purchasers for a valuable consideration and not to creditors." However, the doctrine of "last antecedent" is not without exception. As the Court in *City of Corsicana v. Willmann*, 216 S.W.2d 175, 176 (Tex.1949), stated:

> [T]he rule [of last antecedent] is neither controlling nor inflexible. It may be rebutted by the circumstances. It should not be applied without regard to the meaning of the language read as a whole. It is not applicable when a further extension is clearly required by the

intent and meaning of the context. 50 Am.Jur., p. 258, sec. 269.

We find no case applying the rule of "last antecedent" when courts have interpreted Article 6627. Again, as the Court in *Burks* stated: "The statute by its terms makes void the unrecorded deed as against 'all creditors,' but the courts hold this to mean all creditors who have acquired liens without notice of the deed." See *Jensen v. Bryson, supra.* The rule of "last antecedent" was not applied to Article 6627, and the legislature clearly intended no substantive revision in the creation of the Texas Property Code which includes Section 13.001(a). We hold that the rule of "last antecedent" does not apply to Section 13.-001(a). In order for a creditor to prevail over an unrecorded instrument, the creditor must be without notice of such unrecorded instrument and must have given valuable consideration.

In view of our above holdings, it is not necessary for us to decide whether Westwood's open and visible possession of the leases constituted notice to MBank.

MBank's second point of error involves its counterclaim for conversion of gas proceeds received by Westwood from leases on which MBank claims to have a prior perfected security interest. After SEI defaulted on its obligation to pay its share of operating expenses, SEI executed a transfer order on January 20, 1983, authorizing payment to Westwood of SEI's pro rata share of the proceeds from the sale of gas.

The trial court in its findings of fact stated that "[t]here is no evidence of any conversion" by Westwood. In its conclusions of law, the trial court stated that "[t]here was no conversion" by Westwood. TEX.R.CIV.P. 299 states in part the following:

> Where findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumption of finding upon any ground of recovery or defense,

no element of which has been found by the trial court....

None of the findings of fact or conclusions of law relate to the elements of MBank's claim for conversion. Where the trial court files findings which do not establish any element of the theory of recovery or defense, the party relying upon that theory of recovery or defense must file a request for additional findings in order to avoid waiver of that theory of recovery or defense on appeal. *Pinnacle Homes Inc. v. R.C.L. Offshore Engineering Co.*, 640 S.W.2d 629 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). The *Elliott v. Bowden*, 564 S.W.2d 825, 828 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.), case is similar to the instant case. The court in *Elliott* stated:

> Elliott [appellant] requested the court to file findings of fact and conclusions of law, but the trial court's findings contained no findings of fact relevant to the estoppel defense and merely stated in the conclusions of law that "Plaintiff's cause of action is not barred by estoppel." Elliott then requested additional findings of fact and conclusions of law, but none of the requested findings of fact were relevant to the elements necessary to establish estoppel.
>
> Elliott's failure to request additional findings of fact relevant to the estoppel defense effected a waiver thereof. *Micrea, Inc. v. Eureka Life Insurance Company of America*, 534 S.W.2d 348, 357 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); *Home Indemnity Company v. Muncy*, 449 S.W.2d 312, 316 (Tex.Civ.App.—Tyler 1969, n.r.e.); *Crown Life Insurance Company v. Reliable Machine and Supply Co.*, 427 S.W.2d 145, 149 (Tex.Civ.App.—Austin 1968, writ ref'd n.r.e.); *McKenzie v. Carte*, 385 S.W.2d 520, 529 (Tex.Civ.App. —Corpus Christi 1964, writ ref'd n.r.e.); *Pinson v. Dreymala*, 320 S.W.2d 152, 156 (Tex.Civ.App.—Houston 1958, writ dism'd); 4 McDonald, Texas Civil Practice sec. 16.09 (1971).

MBank failed to request additional or amended findings of fact and conclusions of law relevant to the elements of MBank's claim of conversion. We hold that MBank waived this theory of recovery. See TEX. R.CIV.P. 299; *Puckett v. First City National Bank of Midland*, 702 S.W.2d 232 (Tex.App.—Eastland 1986, writ ref'd n.r.e.); *Pinnacle Homes Inc. v. R.C.L. Offshore Engineering Co., supra; Elliott v. Bowden, supra.*

MBank's theory of recovery on appeal is that it had a prior perfected security interest under TEX.BUS. & COM.CODE ANN. sec. 9 (Vernon Supp.1987). None of the findings of fact or conclusions of law relate to the elements of this theory of recovery, and MBank failed to request additional or amended findings of fact and conclusions of law relevant to this theory. We hold that MBank also waived this theory of recovery under Section 9. See TEX.R.CIV.P. 299; *Puckett v. First City National Bank of Midland, supra; Pinnacle Homes Inc. v. R.C.L. Offshore Engineering Co., supra; Elliott v. Bowden, supra.*

■ If MBank has not waived its theories of recovery for conversion and under Section 9, we disagree with MBank's contention that it proved it had a prior perfected security interest. A security interest in goods "may be perfected by the secured party's taking possession of the collateral." TEX.BUS. & COM.CODE ANN. sec. 9.305 (Vernon Supp.1987). MBank bases its claim for conversion on the contention that extracted oil and gas are not "goods" under Section 9. The term "goods" is defined in TEX.BUS. & COM.CODE ANN. sec. 9.105(a)(8) (Vernon Supp.1987) as including "all things which are movable at the time the security interest attaches ... but does not include ... minerals or the like (including oil and gas) *before extraction.*" (Emphasis added) We hold that the above statute, by implication, provides that extracted oil and gas are classified as "goods." See 8 HAWKLAND, UNIFORM COMMERCIAL CODE SERIES sec. 9–105:09 (1986); Comment, *The Effect of Texas U.C.C. Section 9.319 on Oil and Gas Secured Transactions*, 63 TEXAS L.REV. 311 (1984).

MBank also argues that even if extracted oil and gas are "goods," Westwood still has not perfected its interest. MBank contends that in order to allow perfection by possession, Westwood's retention of the oil and gas produced was "insufficient" to perfect their interest. MBank contends that the critical inquiry in assessing whether a security interest is perfected is whether a reasonably prudent subsequent creditor would have discovered the prior security interest. See *In re McBee*, 714 F.2d 1316, 1321 (5th Cir.1983). In the *In re McBee* case, the court was addressing perfection by the filing of a financing statement and not possession; therefore, this case is not applicable to the facts in the instant case.

MBank's points of error are overruled. The judgment of the trial court is affirmed.