Opinion issued July 7, 2016



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00326-CV

————————————

**DON ABBOTT HOLMES AND GAYLE EISER HOLMES, Appellants**

**V.**

**JETALL COMPANIES, INC., Appellee**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-07148**

---

## MEMORANDUM OPINION ON REHEARING

Jetall Companies, Inc. sued Don Holmes and Gayle Holmes for breach of a contract to sell property. The jury found the Holmeses breached the contract and awarded damages for lost property value, lost profits, and attorneys' fees. In two issues on appeal, the Holmeses argue (1) the evidence is legally insufficient to

support the jury's award of lost profits and (2) the trial court abused its discretion by denying Gayle's request for a jury question on anticipatory repudiation.

On April 7, 2016, we issued our original opinion in this case. Jetall filed a motion for rehearing. We deny the motion for rehearing, withdraw our prior opinion and judgment, and issue this opinion and a new judgment in their place. Our disposition remains the same.

We reverse and render.

## Background

The Holmeses own certain undeveloped property in Houston, Texas. Ali Choudhri is the owner of Jetall Companies, Inc. On October 28, 2011, Choudhri and Don Holmes entered into an agreement to sell the property to Jetall Companies. The agreement required Don to perform certain tasks before the sale was closed.

Before closing, a dispute arose concerning whether Don had sufficiently performed the tasks required for closing. The Holmeses did not appear on the closing date to sell the property to Jetall. Jetall brought suit against the Holmeses, alleging breach of contract and seeking lost profits.

The lot was platted for a single-residence home. Choudhri testified that he had intended to split the property in two and build two townhomes. He testified Jetall had "built successfully a number of homes inside the loop." This included two townhomes at some time in the past. Those townhomes had been very successful

with a number of offers on the homes before construction was complete. In fact, due to the number of acceptable offers, Choudhri picked which offers to accept by picking the offers out of a hat.

Choudhri testified that he had intended to use the designs for those two townhomes for the Holmeses' property with some modifications. For the cost of construction, Choudhri testified that it would have cost at least $800,000 to build each townhome. He asserted that he used "numbers and calculations based on what the market price of materials, labor, everything else associated with construction." He explained that he had over 20 years' experience in the property business, buying his first property as a teenager. He testified that he expected to obtain $600,000 profit on each townhome.

Also during trial, Don testified that Choudhri was threatening to withhold up to $15,000 of the agreed price for the sale of the property based on the ground that the Holmeses had not satisfied certain pre-closing requirements. He testified that the money would be "held until Mr. Choudhri decided how much it was going to cost him" to complete what he alleged had not been completed. Don further testified that Choudhri said that he would sue Don if he did not close immediately.

During the jury charge conference, Gayle asked for an instruction on anticipatory repudiation based on Don's testimony about Choudhri's threats to withhold a portion of the purchase money. The trial court denied the request.

**Lost Profits**

In their first issue, the Holmeses argue the evidence is legally insufficient to support the jury's award of lost profits.

**A.     Standard of Review**

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In performing a legal-sufficiency review, we must credit favorable evidence if reasonable fact finders could credit it and disregard contrary evidence unless reasonable fact finders could not disregard it. *Id.* A "no evidence" point of error must be sustained when (a) the record discloses a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810–11.

A legal sufficiency challenge of a finding fails when more than a scintilla of evidence supports the finding. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). "'More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and

fair minded people to differ in their conclusions.'" *Id.* at 388 (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)).

**B.     Analysis**

"[L]ost profits can be recovered only when the amount is proved with reasonable certainty." *Phillips v. Carlton Energy Group*, LLC, 475 S.W.3d 265, 278 (Tex. 2015).   "It is not necessary that profits should be susceptible of exact calculation, it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness." *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994) (internal quotations omitted).   "What constitutes reasonably certain evidence of lost profits is a fact intensive determination." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

For expert testimony and other evidence estimating lost profits, the evidence "must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Id.*  While admission of the supporting documentation can affect the weight of the evidence, "it is not necessary to produce in court the documents supporting the opinions or estimates." *Id.*

Many cases demonstrate what constitutes sufficient evidence of lost profits. In *White*, a florist sought lost profits for the incorrect listing of his phone number in an advertisement in the yellow pages—the business section—of the phone book.

*White v. Sw. Bell Tel. Co., Inc.*, 651 S.W.2d 260, 261–262 (Tex. 1983). To prove lost profits, the florist introduced evidence of gross sales for a seven-year period, including the year of the incorrect listing. *Id.* at 262. An accountant provided a linear regression showing what sales would have been. *Id.* Other evidence was presented showing wire service sales—untouched by the error—increased in the relevant time period. *Id.* The florist testified about what percentage of his sales were profit and about his expenses on sales. *Id.* at 262–63. The court held this was sufficient evidence of lost profits. *Id.* at 263.

In *B & W Supply*, homeowners sued the company they hired to remodel their home, and the company countersued for lost profits. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 14 (Tex. App.—Houston [1st Dist.] 2009, pet denied). The jury found for the remodeling company. *Id.* at 14–15. The owner of the company testified about the process of setting a bid price, including how he anticipates profit in the bid. *Id.* at 18. The evidence showed the amount spent on the project before the breach and how much the homeowners had paid in that time. *Id.* An exhibit detailed the cost of labor and materials that would have been incurred without the breach. *Id.* The owner of the company explained what work remained and how much would have been spent in that process. *Id.* We held this was sufficient evidence of lost profits. *Id.*

In *Barnett*—a case relied upon by Jetall in its brief—the owners of a gymnastics business contracted with a builder to build a new gymnastics facility. *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 813 (Tex. App.—Dallas 2003, pet. denied). After the bank foreclosed on the property, the parties sued each other, and the jury found in favor of the gymnastics business. *Id.* Lewis, one of the owners of the gymnastics business and one of the instructors, testified about the business expanding over three years from 24 students to 1,400 students. *Id.* at 827. The business had been profitable each year, and the jury had evidence of the previous year's profit. *Id.* Lewis testified about how the business expected increased profits during the year in question based on the business's previous growth and based on the growth of the city in which the business was located. *Id.* at 827–28. The court determined that Lewis demonstrated his familiarity "with the business and that he based his estimate on the trend in the industry and the specific area where the business was located." *Id.* at 828. The court held this was sufficient evidence of lost profits. *Id.*

Other cases illustrate when evidence is insufficient to prove lost profits. In *Phillips*, a jury found that the defendant had tortiously interfered "with the owner's contract to convey an interest [in a coalbed methane prospect in Bulgaria] to the plaintiff." 475 S.W.3d at 269. A report was introduced at trial projecting the profits that could have been received from the prospect during the time in question. *Id.* at

7

280–81. The report estimated the volume of methane in the ground, the amount recoverable, and the wellhead price. *Id.* It subtracted the cost of drilling, production, operation, and royalty payments to determine profit. *Id.* An expert estimated a lower amount that could be recovered, lowering the lost profit calculation. *Id.* at 281.

The court held that this was insufficient evidence of lost profits. *Id.* The court criticized the assumptions forming the basis for the calculation and found the lack of support for these assumptions rendered the calculations insufficient. *Id.* "Merely laying out the calculation, with its sweeping assumptions, demonstrates how completely conjectural it is." *Id.* The court criticized the lack of support for predicting the volume of methane gas, assessing risks of production, and assessing risks for sale. *Id.* For example, the plaintiff's "experts projected that the costs of bringing the gas to market would be four times the value of the gas in the ground, but the evidence does not explain why that projection was reasonable."[1] *Id.*

In *Glattly*, a company in the after-market air starter business sued one of its manufacturers that became a competitor. *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 626–27 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). To prove lost profits, Air Starter presented the testimony of a certified public

---

[1]    The court found there was sufficient evidence of lost profits based on an existing agreement for the sale of the interest. *Phillips v. Carlton Energy Group, LLC*, 475 S.W.3d 265, 281–82 (Tex. 2015). There is no corollary agreement in this case. Thus, this portion of the opinion is not relevant to our analysis in this case.

accountant, who testified about the lost profits for two specific clients. *Id.* at 631. The accountant assumed that all of the sales made by the competitor to these clients would have been made by Air Starter instead and assumed that Air Starter's general profit margin would have applied to these two specific clients. *Id.* at 632. No evidence was introduced to support either assumption. *Id.* We held this evidence was insufficient. *Id.* at 635. We reasoned that the evidence was insufficient, in part, due to the acountant's failure to do "independent work to verify the reasonableness or reliability of the assumptions provided by [Air Starter's president], and no other evidence was offered in support of those assumptions." *Id.*

Finally, in *Examination Management*, Kersh Risk Management had a number of contracts to provide wellness programs and subcontracted with Examination Management to "perform biometric testing services." *Examination Mgmt. Servs., Inc. v. Kersh Risk Mgmt., Inc.*, 367 S.W.3d 835, 838 (Tex. App.—Dallas 2012, no pet.). Allegations of mishandling scheduled tests arose, leading to litigation. *Id.* at 838–39. Kersh alleged that it lost business from Examination Management's mishandling of testing. *Id.* at 839. To prove lost profits, Kersh offered the original contract with one of the clients and then the contract with that same client after the claimed problems with Examination Management. *Id.* at 841. Two Kersh employees testified that the services in the two contracts were "comparable" and that the performance costs were "very similar." *Id.* at 841–42. The court held this was

insufficient. *Id.* at 842–43. The court distinguished the facts of the case from cases that "involve[d] calculations of damages based on specific facts, figures, or data regarding lost profits, often supported by expert testimony or the testimony of the owner of the business." *Id.* at 843 (citing, among others, *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 505–06 (Tex. 2001); *D/FW Commercial Roofing Co. v. Mehra*, 854 S.W.2d 182, 188 (Tex. App.—Dallas 1993, no writ); *Allied Bank West Loop, N.A. v. C.B.D. & Assocs., Inc.*, 728 S.W.2d 49, 54–55 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.)). *Kersh*, in contrast, "did not enumerate costs or overhead in the two agreements or provide objective facts, figures, or data from which those costs or overhead could be determined with reasonable certainty." *Id.* The court was dismissive of the sufficiency "of lost profits damages based on a witness's contention that expenses between two contracts were 'similar.'" *Id.*

Jetall argues that it presented sufficient proof of lost profits and likens the facts of this case to those of *Barnett*. We disagree that it presented sufficient proof.

It is commonly necessary in presenting proof of lost profits to make some assumptions because determining lost profits usually entails estimating a counterfactual scenario of what would have had happened but for the improper actions of the defending party and comparing that to what actually did happen. *See Tex. Instruments*, 877 S.W.2d at 279 (holding lost profits do not need to be proven with exact calculation but with reasonable degree of certainty). But that does not

relieve the party with the burden of proof of identifying those assumptions and presenting the jury with some proof of why those assumptions are reasonable. *See Phillips*, 475 S.W.3d at 278 ("[L]ost profits can be recovered only when the amount is proved with reasonable certainty.").

The common thread running through each of the cases we have summarized is that a party seeking to prove lost profits must provide a model showing how the amount of lost profits can be determined, support that model with facts and assumptions, and demonstrate how the assumptions in the model are reasonable. *Compare White*, 651 S.W.2d at 262–63 (holding accountant's linear regression analysis along with proof of sales unaffected by error during same time period was sufficient to establish lost profits), *B & W Supply*, 305 S.W.3d at 18 (holding detailed evidence of costs and profits incurred before breach along with review of work remaining and projections of costs and payments remaining was sufficient), *and Barnett*, 123 S.W.3d at 827–28 (holding testimony of previous profit growth, along with demonstrated familiarity with industry and growth of local area, was sufficient) *with Phillips*, 475 S.W.3d at 281 (holding merely laying out formula without supporting assumptions is insufficient), *Glattly*, 332 S.W.3d at 635 (holding unsupported assumptions of amount of sales and profit margin was insufficient) *and Examination Mgmt.*, 367 S.W.3d at 841–43 (holding testimony that two contracts

were comparable and performance costs were very similar was insufficient without enumerating costs). Jetall's evidence does not satisfy these requirements.

Choudhri testified that he expected to obtain $600,000 profit on each townhome. Choudhri testified that he used "numbers and calculations based on what the market price of materials, labor, everything else associated with construction." For the cost of construction, Choudhri testified that it would have cost *at least* $800,000 to build each townhome. Even if we accept these general statements as his damage model, the statements are unsupported by any substantive facts, do not identify what assumptions were made in deriving the numbers provided, and do not explain how any assumptions are reasonable.

Jetall contends Choudhri did provide such detail, relying on his testimony that he testified that his estimate of profits was based on his experience selling other townhomes, that Jetall had "built successfully a number of homes inside the loop," that his design for the townhomes on the Holmeses' property was based on a design for two townhomes he had previously built, and that Jetall had so many bids on those townhomes, he had to pick the purchaser out of a hat. Missing from this testimony is any details to show that the two sales should be considered comparable.

We do not know when the construction and sales on the other residences took place. Choudhri testified he had worked in the real estate business for over 20 years, starting as a teenager. He also testified that he began looking at properties in

Houston in the late 1990s. The record does not pinpoint where, in this at least 15-year period of sales, that the alleged comparable sales took place.

Likewise, we do not know what market conditions would have been at the projected time of sale. This is in part because the jury was never told what the projected time of sale could have been. The jury had no basis, then, to determine that, for whichever sales were actually used, the market conditions for those sales accurately reflected the market conditions whenever the hypothetical townhomes in question would have been sold.

We do not know the actual costs incurred or even the actual profit obtained in Choudhri's comparable sales. Without any knowledge of what the costs and profits in those sales actually were, there was no basis for the jury to determine that the sales were, in fact, comparable to what Jetall could have sold on the Holmeses' property.

We also know very little about the difference between the property for the previous townhomes that Choudhri used the design for the current townhomes and the Holmeses' property. We know that both properties were "inside the loop," that the earlier property was near Memorial Park, and that the Holmeses' property was about seven blocks from the Contemporary Arts Museum. Little else was provided, however. "It is well established law that each and every piece of real estate is unique." *Greater Hous. Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.—Houston

13

[14th Dist.] 1982, no writ). The information provided by Choudhri was insufficient to show why these unique properties should be considered comparable.

Jetall also argues in its brief that, in order to prove lost profits, "a plaintiff's lost profits estimate merely must be *based on* 'objective facts, figures, or data from which the amount of lost profits can be ascertained.'" Jetall reasons that, because Choudhri stated in his testimony that he took such considerations into account in forming his opinion on lost profits, this simple assurance is enough to withstand a legal sufficiency challenge to his lost profits award. This is unsupported by the law.

Jetall correctly states that the Supreme Court of Texas has held, "As a minimum, opinions or estimates of lost profits must be *based on* objective facts, figures, or data from which the amount of lost profits can be ascertained." *Holt Atherton*, 835 S.W.2d at 84 (emphasis added). It is also correct that the court has held, "Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates." *Id.* But these holdings do not cancel out the further holding that "[t]he amount of [lost profits] must be shown by competent evidence with reasonable certainty." *Id.*

Jetall was not excused from supporting with evidence, in some form, the assertions that Choudhri made concerning lost profits. "[T]he evidentiary value of expert testimony is derived from its basis, not from the mere fact that the expert has

14

said it." *Hous. Unlimited, Inc. v. Mel Acres Ranch*, 443 S.W.3d 820, 829 (Tex. 2014). Bare assertions by an expert that he took the necessary considerations into account are not sufficient to carry the burden of proof. *See id.*

We hold the evidence is legally insufficient to support the jury's award of lost profits. We sustain the Holmeses' first issue.

## Anticipatory Repudiation

In their second issue, the Holmeses argue the trial court abused its discretion by denying Gayle's request for a jury question on anticipatory repudiation.

### A. Standard of Review

We review claims of charge error for abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 648 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Tex. Dep't of Human Servs.*, 802 S.W.2d at 649; *Levine*, 488 S.W.3d at 648. A trial court has wide discretion in submitting instructions and jury questions. *Levine*, 488 S.W.3d at 648.

### B. Analysis

During the charge conference, Gayle requested a question about whether Jetall had repudiated the contract. The trial court refused to include the question in the

charge. On appeal, the Holmeses argue the trial court abused its discretion by not including the question.

A trial court must submit to the jury all questions, instructions, and definitions raised by the pleadings and evidence. TEX. R. CIV. P. 278 ("The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence."); *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). If there is some evidence to support submission of the question, the trial court commits reversible error if it fails to submit the question. *See Hiles v. Arnie & Co., P.C.*, 402 S.W.3d 820, 830 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

Gayle requested a question about whether Jetall had repudiated the contract based on Don's testimony that Choudhri was threatening to withhold up to $15,000 of the agreed price for the sale of the property based on his belief that the Holmeses had not satisfied certain pre-closing requirements. Don testified that the money would be "held until Mr. Choudhri decided how much it was going to cost him" to complete what he alleged had not been completed. Don further testified that Choudhri said that he would sue Don if he did not close immediately.

To establish a claim or defense of anticipatory repudiation, the asserting party must show that the other party to the contract "expressed in unequivocal and unconditional terms, and without just excuse, its intent not to perform [the contract]

16

in the future." *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 606 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Don's description of Jetall's actions does not establish an unequivocal and unconditional expression of an intent not to perform the contract in the future. To the contrary, Choudhri was insisting on continued performance.

While Choudhri was threatening to withhold a little more than three percent of the purchase price at the time of closing, this is not tantamount to a refusal to perform the contract. Even if Choudhri had carried through with his threat and the withholding would have been wrongful, at best this would have been a failure to satisfy the entirety of the contract, not a complete repudiation of the contract. Moreover, Don acknowledged in his testimony that Choudhri was not threatening to keep the entire $15,000. Instead, Choudhri only asserted he would keep this fraction of the contract price until he could determine how much it would cost to complete what he alleged Don had failed to do. Again, even if Choudhri's position was wrong, it could not constitute a repudiation of the contract. *See id.*

The cases upon which the Holmeses rely are not comparable to this case. Those cases are instances where a party refused to perform a contract at all unless the other party agreed to changes in the contract. *See Dror v. Mushin*, No. 14-12-00322-CV, 2013 WL 5643407, at *5 (Tex. App.—Houston [14th Dist.] Sept. 26, 2013, pet. denied) (mem. op.) (holding threatening not to fund previously agreed

17

settlement agreement unless other party acquiesced to additional terms was anticipatory repudiation); *First Fed. Sav. & Loan Ass'n of Wilmette, Ill. v. Pardue*, 545 F. Supp. 433, 436–37 (N.D. Tex. 1982), *aff'd sub nom. 1st Fed Sav/Loan-Wilmette v. Pardue*, 703 F.2d 555 (5th Cir. 1983) (holding refusing to close real estate deal without changes to agreement was anticipatory repudiation); *Crown Life Ins. Co. v. Reliable Mach. & Supply Co.*, 427 S.W.2d 145, 150 (Tex. Civ. App.—Austin 1968, writ ref'd n.r.e.) (holding refusing to reinstate policy without payment of additional premiums and other requirements was anticipatory repudiation); *Humphrey v. Placid Oil Co.*, 142 F. Supp. 246, 254 (E.D. Tex. 1956), *aff'd,* 244 F.2d 184 (5th Cir. 1957) (holding refusing to perform contract unless party agreed to additional requirements not part of contract was anticipatory repudiation).[2]  As opposed to those cases, Jetall did not refuse to comply with the contract without compliance with additional terms.  Instead, Jetall insisted that both parties continue to perform, albeit with a threat to withhold a small fraction of the money owed until the disputes that had arisen could be resolved.  Regardless of whether Jetall's actions were wrongful, they did not constitute a repudiation of the contract.

We overrule the Holmeses' second issue.

---

[2]    The Holmeses also rely on *Lytle Lake Water Control & Improvement Dist. v. Shaw Envtl., Inc.*, No. 1:05-CV-112-C, 2006 WL 6863698, at *8 (N.D. Tex. July 25, 2006).  This case has no application because the court found that the party had *failed* to establish in its summary judgment evidence that anticipatory repudiation applied. *Id.*

## Specific Performance

In its motion for rehearing, Jetall argues, "If lost profits are not recoverable, then Jetall elects specific performance as provided for by the contract." It also argues, "Alternatively, since specific performance would be a correct damage award for breach of the contract that was the subject of the suit, remand for a new trial is appropriate." Both of these arguments fail because Jetall abandoned its claim for specific performance.

After the jury has returned its verdict, if the prevailing party obtains a favorable verdict on inconsistent theories of relief, the prevailing party is entitled to elect under which theory it wants to recover in the judgment. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006). If a judgment is reversed on appeal, the losing party can seek to recover instead on an alternative theory upon which the party prevailed at trial. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988); *Jerry L. Starkey, TBDL, L.P. v. Graves*, 448 S.W.3d 88, 97 (Tex. App.—Houston [14th Dist.] 2014, no pet.). To be entitled to change the basis for its recovery, however, the party must have *prevailed* on that theory. *See Boyce Iron Works*, 747 S.W.2d at 787; *Starkey*, 448 S.W.3d at 97.

Recovering economic damages for breach of contract and obtaining specific performance of a contract are inconsistent, alternative theories for relief. *Goldman v. Olmstead*, 414 S.W.3d 346, 361 (Tex. App.—Dallas 2013, pet. denied). To obtain

specific performance of a contract, the plaintiff "must plead and prove (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation, and (2) the readiness, willingness, and ability to perform at relevant times." *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 601 (Tex. 2008). Both of these elements are fact questions. *See id.* at 596, 600.

"If no element of an independent ground of recovery that is not conclusively established by the evidence is included in the charge without request or objection, the ground of recovery is waived." *Id.* at 598 (citing TEX. R. CIV. P. 279). Questions concerning recovery under breach of contract are insufficient to raise the issue. *Id.* at 599. No questions concerning specific performance were included in the charge, and Jetall did not request their inclusion. Accordingly, Jetall waived any right it may have had to recovering on this ground. *See id.* at 598.

## Conclusion

We reverse the portion of the judgment awarding lost profits in the judgment and render a judgment without the lost-profits award. We affirm the remainder of the judgment.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Higley.