Barney BARNETT d/b/a Superior Built Construction, Appellant,

v.

COPPELL NORTH TEXAS COURT, LTD., NTC Lewis, Inc., North Texas Gymnastics Academy, Inc., David J. Lewis, and Wanda M. Lewis, Appellees.

No. 05–02–01163–CV.

Court of Appeals of Texas, Dallas.

Dec. 18, 2003.

Rehearing Overruled Jan. 29, 2004.

Steven E. Kennedy, McGuire, Craddock & Strother, P.C., Jeffrey Robert Sandberg, Dallas, for Appellant.

Richard E. Schellhammer, Robert H. Dawson, Heather Farris Bennett, Goins Underkofler Crawford & Langdon, Dallas for Appellee.

Mark L. Sax, Sax & Associates, P.C., Houston, Russell Edward Clincage, Pratt & Sanderford, P.C., Arlington, for Intervenor.

Before Justices WHITTINGTON, O'NEILL, and LANG.

## OPINION

Opinion by Justice WHITTINGTON.

Barney Barnett d/b/a Superior Built Construction appeals the trial court's judg-

ment, entered following a jury verdict, in favor of Coppell North Texas Court, Ltd. ("CNTC"), NTC Lewis, Inc. ("NTC"), North Texas Gymnastics Academy, Inc. ("NTGA"), David J. Lewis, and Wanda M. Lewis. In nineteen issues, Barnett contends (i) the evidence is legally and factually insufficient to support the jury's verdict, (ii) he established his claims as a matter of law and the jury's failure to find in his favor was against the great weight and preponderance of the evidence, (iii) the trial judge erred in denying his requested questions and instructions and overruling his objections to the jury charge, and (iv) he was entitled to damages and attorney's fees. We affirm the trial court's judgment.

## BACKGROUND

David Lewis owned NTGA, a successful gymnastics instruction business. NTGA was the sole source of income for Lewis and his wife, Wanda. Because business was successful, the Lewises decided to expand and build their own facility. They formed CNTC. NTC, another entity owned by Lewis, was CNTC's general partner. In the spring of 1998, the Lewises contracted with Barnett to build their new facility, the North Texas Family & Sports Complex ("the Project"). Lewis secured a loan from Legacy Bank ("the Bank") on the Project. Barnett began construction in the summer of 1998 and left the job during the summer of 1999.

On January 10, 2000, the Bank sued appellees and Barnett. During the summer of 2000, the Bank foreclosed on the property. On April 19, 2001, appellees filed a cross-claim, suing Barnett. After filing an answer, Barnett filed cross-claims against appellees. The Bank's claims were resolved and severed from the underlying case. This case, involving Barnett and appellees, proceeded to a jury trial, after

which the trial judge entered judgment in favor of appellees. This appeal followed.

## STANDARDS OF REVIEW

■ Barnett raises several issues challenging whether the evidence adduced at trial supports the jury's answers to questions in the jury charge. A party who challenges the legal sufficiency of the evidence to support an issue upon which he did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Kroger Tex. Ltd. P'ship v. Suberu*, 113 S.W.3d 588, 595–96 (Tex.App.-Dallas 2003, pet. filed); *Luce v. Interstate Adjusters, Inc.*, 26 S.W.3d 561, 566 (Tex.App.-Dallas 2000, no pet.) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983)). When reviewing a "no evidence" point, we consider only the evidence and inferences supporting the finding and disregard all evidence and inferences to the contrary. *See Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996). If there is any evidence of probative force to support the jury's finding, the "no evidence" issue must be overruled and the finding upheld. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997).

■ When challenging the factual sufficiency of the evidence supporting an adverse finding upon which the appealing party did not have the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Dallas County v. Holmes*, 62 S.W.3d 326, 329 (Tex.App.-Dallas 2001, no pet.) (citing *Croucher*, 660 S.W.2d at 58). In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the finding and will set aside the verdict only if the evidence supporting the jury finding is so weak as to be clearly wrong and unjust.

*Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). We note that, in making this review, we are not a fact finder. Thus, we will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *See Holmes,* 62 S.W.3d at 329; *Tex. Farmers Ins. Co. v. Cameron,* 24 S.W.3d 386, 392 (Tex.App.-Dallas 2000, pet. denied). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Eureste v. Comm'n for Lawyer Discipline,* 76 S.W.3d 184, 195 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

■ In contrast, an appellant attacking the legal sufficiency of an adverse jury finding on which he had the burden of proof must demonstrate that the evidence establishes, as a matter of law, all vital facts in support of the finding. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001) (per curiam). In reviewing such a claim, we first examine the record for evidence supporting the jury's finding, while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). If there is no evidence to support the fact finder's answer, only then will we review the entire record to assess whether the contrary proposition was established as a matter of law. *See Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991); *see also Holley v. Watts,* 629 S.W.2d 694, 696 (Tex. 1982) (because there is evidence of probative force which supports trial court's adverse finding, evidence which supports appellant's cause is not reached).

■ If an appellant challenges a jury finding regarding an issue upon which the appellant had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.,* 46 S.W.3d at 241. In reviewing this challenge, we consider all of the evidence in determining whether the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See In re King's Estate,* 150 Tex. 662, 665, 244 S.W.2d 660, 661 (1951). We may reverse and remand for a new trial if we conclude the jury's failure to find is against the great weight and preponderance of the evidence. *See Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex.1988); *Croucher,* 660 S.W.2d at 58.

### BREACH OF CONTRACT

■ In his first, second, and third issues, Barnett complains of the jury's findings on the breach of contract claims. In his first issue, he claims he established as a matter of law that he was entitled to payment for work he performed on the Project and that the jury's finding of no damages on Question 10 of the jury charge was against the great weight and preponderance of the evidence.[1] In his second issue, Barnett argues (i) there is no or insufficient evidence to support the jury's finding that CNTC's breach was excused, and (ii) he established as a matter of law that his breach was excused and the jury's finding to the contrary on Question 2 of the jury charge was against the great weight and preponderance of the evidence.

1. Barnett also argues he was entitled to payment because he substantially performed under the contract. Barnett did not plead or request submission of a question on substantial performance. Thus, it is waived. *See*

*Great Am. Prod. v. Permabond Int'l,* 94 S.W.3d 675, 684 (Tex.App.-Austin 2002, pet. denied) (holding that party who not only failed to plead but also failed to submit jury question on issue waived complaint on appeal).

■ The elements of a breach of contract claim are (i) the existence of a valid contract between the plaintiff and defendant; (ii) the plaintiff performed; (iii) the defendant breached the contract; and (iv) the plaintiff was damaged as a result of the breach. *Williams v. First Tenn. Nat'l. Corp.*, 97 S.W.3d 798, 802 (Tex.App.-Dallas 2003, no pet.). A breach of a contract by one party excuses performance by the other party. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 689 (Tex.1981). By attacking the legal sufficiency of adverse findings on issues on which he had the burden of proof (the jury's award of zero damages and the jury's finding that his breach was not excused), Barnett must demonstrate the evidence establishes, as a matter of law, all vital facts in support of the issue. *See Dow Chem.*, 46 S.W.3d at 241. We first examine the record for evidence that supports the jury's findings, while ignoring all evidence to the contrary. Only if there is no evidence to support the jury's findings do we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem.*, 46 S.W.3d at 241. With respect to his "factual sufficiency challenge," we consider all of the evidence and determine whether the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See In re King's Estate*, 244 S.W.2d at 661. When addressing his complaint regarding the jury's finding that CNTC's breach was excused, we examine all favorable evidence in the record to see if any evidence of probative force supports the jury's findings; we then weigh all the evidence in support of and contrary to the finding and set aside the finding only if the evidence supporting the jury finding is so weak as to be clearly wrong and unjust. *See ACS Investors*, 943 S.W.2d at 430; *Cain*, 709 S.W.2d at 176.

Question 1 asked the jury to determine who, if anyone, failed to comply with the construction contract. In response, the jury found that both CNTC and Barnett failed to comply. Question 2 asked the jury to determine if any party found to have failed to comply with the construction contract was excused. The jury found CNTC's failure to comply was excused. Barnett challenges this finding as well as the jury's failure to find his breach was excused; he does not challenge the jury's finding that he breached the contract.

■ The evidence shows the contract was signed on April 28, 1998. Lewis testified construction was delayed for four months because Barnett "didn't have the money to begin the project, didn't have a crew that would start without money up front." Barnett's first draw request was for July and August 1998. Regarding the Project, Lewis testified:

> [T]here were some mistakes that were made in placements of concrete piers ... they were in the wrong places so they had to be repositioned and repoured. There were structural changes that had to be made because of the—[Barnett] went with one company and it went bankrupt, and he had to go with another company so that he had to change the type of building we were going to be erecting ... it delayed us because everything had to change around and he had to get new architectural and engineering plans to be drawn up.

In addition, Lewis testified Barnett was not there daily, did not have crews at the job site, and had fewer men in his crews than he told Lewis he would. In July 1999, Barnett walked off the Project. Construction was not completed with the six-month time frame provided in the construction contract and ultimately, the Bank foreclosed.

Brian Kennedy testified he purchased the complex from the Bank at foreclosure in June 2000. According to Kennedy, the building was not finished, nor was it "close to finished." When he bought the property, there remained a lot of work to be done and some existing work, such as concrete and flooring, that had to be redone. Barnett approached Kennedy about finishing the complex. Although Kennedy retained Barnett to finish the shell of the building, Barnett did not finish the work he was hired to do.

Barnett conceded he began work on the Project on June 22, 1998 and did not complete the complex within the time allowed in the construction contract. He testified June 1999 was "the last working month," meaning the last complete working month. He did minimal work in August and some cleaning up of the site as late as early 2000. Barnett testified he stopped working on the complex because he was not paid.

Contrary to Barnett's assertions, there is evidence to support the jury's findings that Barnett's breach was not excused, CNTC's breach was excused, and Barnett was not entitled to breach of contract damages. And, after reviewing the entire record, we cannot conclude the evidence supporting the jury findings of zero damages and that Barnett's breach was not excused is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. Nor do we conclude the evidence supporting the jury's finding that CNTC's breach was excused was so weak as to be clearly wrong and unjust. We overrule Barnett's first and second issues.

Under his third issue, Barnett claims his performance was not delayed and therefore, he did not breach the contract. He adds that, even assuming he delayed performance, CNTC waived the breach caused by the delay by accepting Barnett's continued performance. Appellees argue Barnett waived these issues by failing to plead them as affirmative defenses and failing to request proper jury questions. We agree. *See* Tex. Rs. Civ. P. 94, 278, & 279; *Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.,* 609 S.W.2d 754, 756 (Tex.1980) (Texas Rule of Civil Procedure 94 requires all matters constituting avoidance or affirmative defense be pleaded to give opposing party notice of defensive issues to be tried; failure to do so results in waiver of affirmative defense); *Frazier v. Havens,* 102 S.W.3d 406, 411 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (party waives affirmative defense if not pleaded or tried by consent). We overrule Barnett's third issue.

In light of our disposition of issues one, two, and three, we need not address Barnett's eighteenth issue in which he claims he is entitled to attorney's fees on his breach of contract claim.

UNJUST ENRICHMENT

In his fourth issue, Barnett claims he established as a matter of law that CNTC's failure to pay Barnett was an unjust enrichment and that the jury's finding to the contrary on Question 5 of the jury charge was against the great weight and preponderance of the evidence. In his seventeenth issue, Barnett contends the trial judge erred in denying his request for a jury question on quantum meruit.

Barnett pleaded both unjust enrichment and quantum meruit; unjust enrichment, however, is not an independent cause of action. *See Oxford Fin. Co. v. Velez,* 807 S.W.2d 460, 465 (Tex.App.-Austin 1991, writ denied). Rather, it is an element of an action for restitution. *Oxford Fin. Co.,* 807 S.W.2d at 465 ("an action for restitution based on unjust enrich-

ment will lie 'to recover money received on a consideration that has failed in whole or in part.' ") (citing *Barrett v. Ferrell*, 550 S.W.2d 138, 143 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.)). Quantum meruit is an equitable theory of recovery founded in the principle of unjust enrichment based on an implied agreement to pay for benefits received. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990); *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985). To recover under the doctrine of quantum meruit, a party must establish: (i) valuable services and/or materials were furnished, (ii) to the party sought to be charged, (iii) which were accepted by the party sought to be charged, and (iv) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992).

■ Because it is not a cause of action, the jury was erroneously instructed on "unjust enrichment." Thus, Barnett cannot show the jury's failure to find in his favor constitutes reversible error. Accordingly, we do not address his legal and factual sufficiency challenges.

■ Regarding his argument that he was entitled to a question on quantum meruit, Barnett has failed to adequately brief this issue. His entire summation of the evidence, introduced during a two-and-one-half day trial, establishing his entitlement to a jury question on quantum meruit is: "Barnett presented evidence on each of these elements." He then cites this Court generally to plaintiff's exhibits 2 through 10. An appellate court has no duty to search a voluminous record without sufficient guidance from an appellant to determine whether an assertion of reversible error is valid. *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 237 (Tex.

App.-Dallas 2000, pet. denied); *Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407, 412 (Tex.App.-Dallas 1987, writ ref'd. n.r.e.) ("It is not the duty of the court of appeals to make an independent search of the statement of facts.") (citing *Saldana v. Garcia*, 155 Tex. 242, 248, 285 S.W.2d 197, 201 (1955)); *see Melendez v. Exxon Corp.*, 998 S.W.2d 266, 280 (Tex.App.-Houston [14th Dist.] 1999, no writ). Thus, we conclude his complaint is insufficiently briefed.

■ Even if we were to address his complaint, we would conclude it lacks merit. Barnett's "evidence" on each element consists of draw requests submitted to the Bank. Each draw request contains only Barnett's written request for a dollar amount from the Bank and a spreadsheet showing "budget line items" to date. The draw requests contain no evidence that valuable services or material were furnished to appellees. The requests do not contain copies of invoices or bills establishing materials were purchased, nor do they establish what services, if any, were provided. Barnett cites no other evidence in support of his contention. This constitutes no evidence that "valuable services and/or materials were furnished." Therefore, we conclude Barnett was not entitled to the requested question on quantum meruit. In light of our disposition of this argument, we also conclude Barnett's argument under his first issue, asserting that he should have recovered under quantum meruit as an alternative to his breach of contract cause of action, lacks merit.

NEGLIGENT MISREPRESENTATION

In his fifth issue, Barnett claims he established as a matter of law that CNTC and Lewis negligently misrepresented the status of the lending on the Project and the jury's finding to the contrary on Question 3 of the jury charge was against the

great weight and preponderance of the evidence. In support of his argument, Barnett points to his testimony that "there was some talk about the Bank's promise that there would be additional lending," and that he relied on "what the bank told [him]." He also testified Lewis told him the "same thing the bank [did]," and that he relied on it as well.

■ The elements of a cause of action for negligent misrepresentation are: (i) the representation is made by a defendant in the course of his business or in a transaction in which he has a pecuniary interest; (ii) the defendant supplies "false information" for the guidance of others in their business; (iii) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (iv) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991). Because Barnett is attacking the legal sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *See Dow Chem.,* 46 S.W.3d at 241. We first examine the record for evidence that supports the jury's finding, while ignoring all evidence to the contrary. Only if there is no evidence to support the jury's finding do we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem.,* 46 S.W.3d at 241. Regarding his "factual sufficiency challenge," we consider all of the evidence and determine whether the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See In re King's Estate,* 244 S.W.2d at 661.

■ Question 3 stated: "Did David Lewis or Barney Barnett make a negli-

gent misrepresentation on which the other (on his own behalf or on the behalf of others) justifiably relied?" The jury answered "No" for Lewis and "Yes" for Barnett. During trial, Barnett testified (i) he knew Lewis and his wife were borrowing money to get the complex built and did not have money to build the complex out of their own pockets; (ii) Elaine Edinger, the loan officer on Lewis's account, represented to Barnett there would be additional funding on the Project; (iii) Barnett spoke frequently with Edinger about the funding and during many (but not all) of the conversations, Lewis was present; (iv) Barnett had no reason to believe Edinger was lying and, in fact, relied on her statements and continued working on the Project; (v) Lewis told Barnett that the Bank had told Lewis there would be additional funding; (vi) Barnett thought it was reasonable that he rely on Edinger's statements and he did so; and (vii) Barnett thought it was reasonable for Lewis to rely on Edinger and believe what Edinger was telling him "about the funding being forthcoming." Additionally, the record contains two affidavits, executed by Barnett in May 2000 and April 2001, in which he testified he "spoke with Edinger to discuss when the Bank would pay" the eighth and ninth draw requests; "Edinger represented" there was a slight delay in funding but that the draw requests "would definitely be paid in a few weeks;" and Edinger asked that Barnett continue construction of the Project and represented to him "that if the other lender did not fund the loan, the Bank would provide the additional financing, which would result in [Barnett] receiving payment." Barnett testified he told Edinger he would keep working because the draw requests were going to be paid, and because his understanding, "based upon these representations made by Edinger, was that the Bank

was promising to sign written documents, or had already done so, that would evidence the increased loan amount." Barnett also testified that "[i]n reliance upon Edinger's representations, I and my subcontractors continued our construction of the Project. If I had not received these representations, I would not have continued the construction of the Project."

Here, the record contains ample evidence supporting the jury's finding that Lewis did not make a negligent misrepresentation on which Barnett relied, rather, Barnett was in frequent contact with the Bank and the Bank represented to Barnett that the funding was forthcoming. Because there is evidence to support the finding, we conclude Barnett did not establish as a matter of law that Lewis made a negligent misrepresentation upon which Barnett relied. Furthermore, the jury was charged with making credibility determinations about any conflicts in the evidence. The jury could have reasonably determined any source of misrepresentation was Edinger and the Bank, not Lewis. Having reviewed all the evidence, we cannot say the jury's finding was so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule Barnett's fifth issue.

In his twelfth issue, Barnett contends, in part, that the evidence is legally and factually insufficient to support the jury's findings that he committed negligent misrepresentation. We examine all favorable evidence in the record to see if any evidence of probative force supports the jury's findings; we then weigh all the evidence in support of and contrary to the finding and set aside the finding only if the evidence supporting the jury finding is so weak as to be clearly wrong and unjust. See ACS Investors, 943 S.W.2d at 430; Cain, 709 S.W.2d at 176.

At trial, Lewis testified he had no experience bidding construction projects and that in "the construction and management and oversight of the construction project [he relied] on [Barnett]." According to Lewis, Barnett bid "three times the facility for one and a half times the amount of money," and it was in a "[m]ore desirable area." The original contract amount was $1.96 million which was the amount Barnett "was going to have [Lewis] bond the building at so that in case anything went really way over that we would be able to still finish the building and have, you know, the building." Lewis testified that Barnett led him to believe the $1.96 million was "not only adequate but more than adequate to build this project." Barnett "just guaranteed [Lewis] that he would get the project finished, no matter what." Barnett represented he would never get more than $180,000, even if costs went up on the building. Barnett was the realtor on the land. Although Lewis was told the land would cost forty to fifty thousand dollars, it turned out to be $200,000. Barnett also represented the building would be completed in six months, he was able to do it in that time frame "with time to spare," and the quality of the construction would be "great." Barnett told Lewis he had adequate crews to "knock it out real quick." According to Lewis, Barnett claimed to have two crews of ten men or more, one of which was with Barnett's then partner, Ross Raines. There would be "approximately twenty-something people working on the building at all times."

Lewis testified that, in contrast to what Barnett told him it would cost, the contract ran over. After cost changes, it was estimated at over $2.3 million. Barnett did not have a twenty-man crew. The only time Lewis could remember there being that many people on the work site was the time he had his gymnasts outside, putting the insulate concrete forms together.

Lewis later discovered Barnett did not have crews of his own. Construction was delayed four months because Barnett did not have the funds to begin the Project. Construction did not proceed on schedule, and the building was not completed within the time frame provided in the contract. Some delay was caused by rain, but there were mistakes in the placement of concrete piers. The piers were in the wrong places and had to be repositioned and repoured. There was a further delay when the type of pier changed and Barnett "had to get new architectural and engineering plans" drawn up. The woman who did the drawings for Barnett withheld them as she had not been paid. Lewis testified he was at the site every other day and that Barnett was there "occasionally," "about half the time." Barnett got crews from a temporary work service, and they were at the site about every third or fourth time Lewis was out there.

Lewis testified Barnett represented to him that he (i) could finish the Project in time, (ii) had sufficient crews, (iii) had great quality work, and (iv) would do it all for $180,000. Lewis also testified that if it had not been for those representations, Lewis and Wanda would not have hired Barnett. They decided to "go forward based on those representations." Lewis did not know those representations were false at the time, and he relied on them. Additionally, Barnett told Lewis later that he underbid the Project and they would have to raise an additional $200,000.

Contrary to Barnett's claims, there is evidence to support the jury's findings that Barnett made negligent misrepresentations on which Lewis justifiably relied. And, after reviewing the entire record, we cannot conclude the evidence supporting the jury findings was so weak as to be clearly wrong and unjust. We overrule his twelfth issue to the extent it complains of the jury's answers on negligent misrepresentation.

## FRAUD

■ Under his seventeenth issue, Barnett contends, in part, that the trial judge erred in submitting a jury question on fraud when the appellees pleaded fraudulent inducement. During the charge conference, Barnett objected to the submission of the fraud question but his objection was overruled. He assigns this ruling as error. We agree. Nevertheless, for the reasons that follow, we conclude the error is harmless. *See* Tex.R.App. P. 44.1(a).

■ In three separate questions, the jury found Barnett committed fraud, breach of warranty, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). In a single question, the charge then instructed the jury to assess damages if the jury found Barnett had committed fraud, breach of warranty, or violations of the DTPA. Barnett did not object to submission of Question 14 on the ground that it failed to segregate damages for each theory of liability or that the damage issue was predicated on an invalid or improper theory of liability. By failing to present these objections to the trial judge, Barnett waives any error in submitting damages on the three causes together. *See In re A.V.,* 113 S.W.3d 355, 358 (Tex. 2003) (because party did not object in trial court to form of charge, he waives that complaint on appeal); *In re J.W.,* 113 S.W.3d 605, 613 (Tex.App.-Dallas 2003, no pet.) (concluding failure to object to jury charge waives error on appeal); *Haggar Apparel Co. v. Leal,* 100 S.W.3d 303, 312 (Tex.App.-Corpus Christi 2002, pet. filed) (holding failure to object to submission of charge waived error). As we discuss in detail below, there is sufficient evidence to support the jury's (i) findings that Barnett committed breach of warranty and viola-

tions of the DTPA and (ii) award of damages for both breach of warranty and violations of the DTPA. In light of this and his failure to object to the question on damages, Barnett cannot show he was harmed by the erroneous submission of fraud. *Cf. Harris County v. Smith*, 96 S.W.3d 230, 232 (Tex.2002) (holding single broad-form liability question commingling valid and invalid liability grounds harmful error when appellant's objection "is timely and specific."); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex.2000) (same); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex.1997) (although jury question regarding attorney's fees failed to segregate fees between different projects and various claims and defenses, neither party objected to failure to segregate and, thus, error was waived).

In light of our disposition of this complaint, we need not address Barnett's argument in his twelfth issue that the evidence is legally and factually insufficient to support the jury's finding that Barnett committed fraud. We overrule those portions of issues seventeen and twelve addressing fraud.

### LIMITATIONS

In his sixth issue, Barnett argues appellees' claims for negligence and violations of the DTPA were barred by limitations. In his appellate brief, Barnett states he left the job site in July of 1999 because he wasn't being paid. Barnett claims that, because appellees "first pleaded these claims" on February 7, 2002, more than two years after the causes of action accrued, the causes of action must be barred by limitations. We disagree.

■ Section 16.068 of the civil practices and remedies code provides:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of

limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 1997). Barnett does not argue the causes of action filed in the February 2002 amended petition are based on a "new, distinct, or different transaction or occurrence." In fact, our review reveals the claims raised in the amended petition arise from the same transaction or occurrence as did the original claims raised in the April 19, 2001 original petition. Because appellees filed their first claims against Barnett on April 2001, within the limitations period, and the causes of action alleged in their February 2002 amended pleading relate to the same transaction, appellees' negligence and DTPA claims were not barred by limitations. We overrule Barnett's sixth issue.

In his seventeenth issue, Barnett complains that the trial judge erred in failing to include limitations in the jury questions regarding negligent misrepresentation and violations of the DTPA. Because the claims contained in appellees' amended pleadings were not barred by limitations, the trial judge did not err in overruling Barnett's objections to the jury charge. We overrule that portion of issue seventeen complaining that the trial judge erred in failing to include limitations in the jury questions regarding negligent misrepresentation and violations of the DTPA.

### STATUTE OF FRAUDS, MERGER DOCTRINE, AND PAROL EVIDENCE RULE

■ In his tenth issue, Barnett contends that, to the extent appellees' claims were based on verbal agreements modify-

ing the existing contract, the claims are barred by the statute of frauds, the merger doctrine, and the parol evidence rule. Barnett pleaded the statute of frauds as an affirmative defense but did not tender a substantially correct question or instruction. He did not plead the merger doctrine or the parol evidence rule, nor did he tender a substantially correct question or instruction on either of these defenses. Accordingly, we conclude he has waived any error on these issues. *See Great Am. Prod.*, 94 S.W.3d at 684.

■ We further note that although the jury awarded contract damages, the final judgment does not award contract damages. Thus, any error relating to these issues would be harmless. *See* TEX.R.APP. P. 44.1(a). We overrule issue ten.

## VIOLATIONS OF THE DTPA

■ In his eighth issue, Barnett claims construction contracts are exempt from the DTPA. In his ninth issue, he claims CNTC was the only entity with whom he contracted and, therefore, CNTC is the only entity who may qualify as a consumer and recover against him under the DTPA. Barnett waived both issues by failing to raise them in the trial court and failing to object to the charge. *See In re A.V.*, 113 S.W.3d at 358 (failure to object in trial court waives complaint on appeal).

■ In his thirteenth issue, he argues the evidence is legally and factually insufficient to support the jury's findings that he committed violations of the DTPA. The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." TEX. BUS. & COM.CODE ANN. § 17.46(a) (Vernon Supp. 2004). Section 17.46(b) is a laundry list of specifically prohibited acts. *See* TEX. BUS. & COM.CODE ANN.. § 17.46(b). Sections 17.46(b)(5) and 17.46(b)(7) prohibit "false, misleading, or deceptive acts or practices [including] ... representing that goods and services have ... characteristics, ingredients, uses, [or] benefits ... which they do not have" and "representing that goods or services are of a particular standard, quality, or grade ... if they are of another." TEX. BUS. & COM.CODE ANN. § 17.46(b)(5) & (7). Section 17.46(b)(24) prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." TEX. BUS. & COM.CODE ANN. § 17.46(b)(24). Actionable representations may be oral or written. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 502 (Tex.2001). A party need not prove intent to make a misrepresentation under sections 17.46(b)(5) or 17.46(b)(7); rather, the act of making the false representation is itself actionable. *Helena Chem. Co.*, 47 S.W.3d at 502; *Smith v. Baldwin*, 611 S.W.2d 611, 616–17 (Tex.1980).

■ Although Barnett claims there is no evidence he violated the DTPA, we disagree. As detailed previously, Lewis testified he had no experience bidding construction projects and relied on Barnett for the management, oversight, and construction of the Project. Barnett promised "three times the facility for one and a half times the amount of money" in a more desirable location. Barnett also led him to believe the contractual amount of $1.96 million was "more than adequate to build this project." Barnett "guaranteed" he would finish the project "no matter what" for $180,000, regardless of whether costs went up on the building. Barnett also represented the building would be completed in six months, he would have "time to spare," and the quality of the construction would be "great." Barnett represent-

ed to Lewis that he had adequate crews of approximately twenty or more men to "knock it out real quick."

Lewis also testified that he and Wanda hired Barnett because of Barnett's representations; if Barnett had not made those claims, they would not have hired him. Lewis testified he relied on Barnett's representations. Thus, contrary to Barnett's claims, there is evidence to support the jury's findings that Barnett engaged in a false, misleading, or deceptive act or practice that appellees relied on to their detriment. And, after reviewing the entire record, we cannot conclude the evidence supporting the jury findings was so weak as to be clearly wrong and unjust. We overrule his thirteenth issue.

In light of our disposition of this issue, we overrule that portion of issue seventeen in which Barnett contends the trial judge erred in submitting a jury question on DTPA because there is no evidence to support submission of the liability theories detailed in the question.

### BREACH OF WARRANTY

■ In his eleventh issue, Barnett first claims the warranty of good and workmanlike performance does not apply to construction contracts. Barnett did not raise this in the trial court below and is therefore precluded from raising it here. Barnett also argues that even if the warranty does apply, he did not breach it, i.e., the evidence is legally and factually insufficient to support the jury's finding on this issue.

■ The implied warranty of good and workmanlike manner provides that a service will be performed in a skillful and workmanlike manner. *See Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 354 (Tex.1987). The implied warranty focuses on a constructor's conduct by defining the level of performance expected when the parties fail to make an express provision in their contract for such performance. *See Centex Homes v. Buecher,* 95 S.W.3d 266, 273–74 (Tex.2002) ("The implied warranty of good workmanship serves as a 'gap-filler' or 'default warranty;' it applies unless and until the parties express a contrary intention."). "Good and workmanlike manner" is "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Melody Home Mfg.,* 741 S.W.2d at 354.

■ The charge asked the jury if Barnett breached the warranty of good and workmanlike performance of the construction contract, and the jury responded that he did. The record shows Barnett failed to complete the work he was required to perform under the contract. Texas courts have held that the failure to complete work required to be performed under contract is a breach of the warranty of "good and workmanlike manner." *Cont'l Dredging, Inc. v. De Kaizered, Inc.,* 120 S.W.3d 380, 391 (Tex.App.-Texarkana, 2003, no pet.) (citing *LaBella v. Charlie Thomas, Inc.,* 942 S.W.2d 127, 135 (Tex.App.-Amarillo 1997, writ denied) and *Melody Home Mfg.,* 741 S.W.2d at 354). Furthermore, Kennedy testified that when he bought the property, not only was there a lot of work remaining to be done, some existing work, such as concrete and flooring, had to be redone. Thus, there is some evidence to support the jury's findings. Although Barnett testified he performed in a good and workmanlike manner, the jury was the fact finder and, as such, assessed the credibility of the witnesses and the weight to be given their testimony. In light of the entire record, we cannot conclude the evidence supporting the jury finding is so

weak as to be clearly wrong and unjust. We overrule Barnett's eleventh issue.

### JURY CHARGE

■■■ In his seventh issue, Barnett argues that because he contracted only with CNTC, only CNTC may recover damages for breach of contract and breach of warranty. In his fourteenth issue, Barnett claims appellees are not entitled to special damages, specifically lost profits. Barnett did not raise these issues in the trial court. He did not object to the submission of damages for either breach of contract or breach of warranty on the ground that it awarded damages to people or entities who could not recover under those causes of action, nor did he object to the submission of lost profits as one of the elements of damages. Because he raises these complaints for the first time on appeal, we conclude he has waived any error. *See Rodgers v. RAB Inv., Ltd.,* 816 S.W.2d 543, 550 (Tex.App.-Dallas 1991, no writ). We overrule issues seven and fourteen.

In his seventeenth issue, Barnett contends the trial judge abused his discretion in submitting an improper jury charge. Specifically, Barnett complains: (i) the trial judge erred in denying Barnett's tendered submissions on jury questions for quantum meruit, promissory estoppel, and release; (ii) the trial judge erred in submitting a jury charge that does not segregate damages for each theory of liability; and (iii) the trial judge erred in submitting a jury charge that does not segregate each element of damages for each individual theory of liability.[2]

### Standard of Review

■■■ We review the trial judge's submission of instructions and jury questions under an abuse of discretion standard. *See Tex. Dep't of Human Services v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990); *Rosell v. Cent. W. Motor Stages, Inc.,* 89 S.W.3d 643, 653 (Tex.App.-Dallas 2002, pet. denied); *Toles v. Toles,* 45 S.W.3d 252, 263 (Tex.App.-Dallas 2001, pet. denied). To determine whether an alleged error in the jury charge is reversible, we consider the parties' pleadings, the evidence presented at trial, and the charge in its entirety. *See Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 663 (Tex.1999); *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex. 1986) (op. on reh'g); *Owens–Corning Fiberglas Corp. v. Martin,* 942 S.W.2d 712, 722 (Tex.App.-Dallas 1997, no writ).

■■■ Where the complaint is that the trial judge failed to submit a particular definition or instruction, the complaining party must have presented a written request for its inclusion, tendering the proposed definition or instruction in substantially correct wording. TEX.R. CIV. P. 278; *see Placencio v. Allied Indus. Int'l, Inc.,* 724 S.W.2d 20, 21 (Tex.1987) (trial court's failure to submit issue shall not be ground for reversal of judgment unless issue was tendered in substantially correct wording). Substantially correct wording means "one that in substance and in the main is correct, and that is not affirmatively incorrect." *Placencio,* 724 S.W.2d at 21. A trial judge must submit a requested jury question if it is supported by some evidence, but may refuse to do so if it is not

2. Under this issue, Barnett also complained (i) the trial judge erred in including a jury charge for common-law fraud when appellees pleaded fraudulent inducement, (ii) there is no evidence to support submission of the definition of certain liability theories under fraud and DTPA, and (iii) the trial judge erred in failing to include limitations in the jury questions regarding negligent misrepresentation and violations of the DTPA. We have already addressed and overruled these complaints.

supported by any evidence. *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992); *James v. Kloos,* 75 S.W.3d 153, 162 (Tex. App.-Fort Worth 2002, no pet.). A reversal is warranted only when the trial judge denies a proper submission of a valid theory of recovery raised by the pleadings and the evidence, *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex.1992) (per curiam), and the error probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1; *see Lone Star Gas Co. v. Lemond,* 897 S.W.2d 755, 756–57 (Tex.1995) (per curiam).

 When the complaint on appeal is that the trial judge improperly submitted an instruction, definition, or question, the error in the jury charge must be preserved by distinctly designating the error and the grounds for the objection. TEX.R. CIV. P. 274; *Keetch v. Kroger Co.,* 845 S.W.2d 262, 267 (Tex.1992). The test for preserving error is "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dep't. of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992). Reversal is warranted when, in spite of a timely objection, the trial judge submits an invalid theory of liability or an unsupported element of damage, and the error prevents the appellant from demonstrating the consequences of the error on appeal. *Harris County v. Smith,* 96 S.W.3d 230, 233–34 (Tex.2002); *Crown Life Ins. Co.,* 22 S.W.3d at 388.

### Tendered Questions

 Barnett claims the trial judge erred in refusing to submit his tendered questions on quantum meruit, promissory estoppel, and release. We have previously addressed the issue of "quantum meruit" under Barnett's fourth issue and concluded it lacked merit. With respect to his argument on promissory estoppel, we again

conclude Barnett has failed to adequately brief this issue. His summation of the evidence introduced at trial showing he was entitled to the tendered question on promissory estoppel is as follows: "Barnett presented evidence on each of these elements." He then cites this Court generally to plaintiff's exhibits 2 through 10. As noted previously, we have no duty to search a voluminous record without guidance from a party to determine whether an assertion of reversible error is valid. *Finlan,* 27 S.W.3d at 237; *Most Worshipful Prince Hall Grand Lodge,* 732 S.W.2d at 412; *see Melendez,* 998 S.W.2d at 280. Thus, we conclude his complaint is insufficiently briefed.

 Even if we were to address his complaints regarding promissory estoppel, we would conclude they lack merit. The elements of promissory estoppel include (i) a promise, (ii) foreseeability of reliance by the promisor, and (iii) substantial reliance by the promisee to his detriment. *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983). Promissory estoppel does not apply to a promise covered by a valid contract between the parties; it does apply, however, to a promise outside the contract. *Richter v. Wagner Oil Co.,* 90 S.W.3d 890, 899 (Tex.App.-San Antonio 2002, no pet.); *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.,* 939 S.W.2d 695, 699 (Tex.App.-El Paso 1997, writ denied); *see Wheeler v. White,* 398 S.W.2d 93, 97 (Tex.1965) ("[W]here there is actually no contract the promissory estoppel theory may be invoked, thereby supplying a remedy which will enable the injured party to be compensated for his foreseeable, definite and substantial reliance.").

In support of this claim, Barnett again refers this Court to his construction draws. Barnett does not discuss what "promise outside the [existing] contract" was made to him, who made the promise, or how he

relied to his detriment. Because he presents no evidence to this Court that he was entitled to a question on promissory estoppel, we conclude the trial judge did not err in refusing his request.

▮▮▮ Finally, Barnett complains that the trial judge refused his request for a jury question on release. We note that although he presented a written request for its inclusion, he did not tender it in "substantially correct wording." At a minimum, a jury charge must define those words and other technical phrases that have distinct legal meanings. *Angelo Broadcasting, Inc. v. Satellite Music Network, Inc.,* 836 S.W.2d 726, 735 (Tex.App.-Dallas 1992, writ denied), *overruled on other grounds by Hines v. Hash,* 843 S.W.2d 464, 469–70 (Tex.1992); *Sec. Sav. Ass'n v. Clifton,* 755 S.W.2d 925, 933 (Tex. App.-Dallas 1988, no writ). The term "release" has a distinct legal meaning. *See Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990) ("Under Texas law, a release is a contract."). Because Barnett's written request for a question on release did not include a definition of "release," we cannot conclude the trial judge erred in denying his request. We overrule this portion of Barnett's issue seventeen.

### Segregation of Damages

▮▮▮ Barnett complains the trial judge erred in submitting a jury charge that does not segregate damages for each theory of liability and each element of damages for each theory of liability. Barnett did not raise this objection below, and he may not do so for the first time on appeal. *See Religious of Sacred Heart of Tex. v. City of Houston,* 836 S.W.2d 606, 614 (Tex.1992) (holding that unless party objects to charge on ground that it submits improper measure of damages, he waives objection and cannot complain on appeal that charge permitted jury to find damages based on

wrong measure, citing *Am. Transfer & Storage Co. v. Reichley,* 560 S.W.2d 196, 199–200 (Tex.Civ.App.-Amarillo 1977, writ ref'd n.r.e.)). We overrule Barnett's seventeenth issue in its entirety.

### DAMAGES

▮▮▮ In his fifteenth issue, Barnett contends the trial judge erred in allowing Lewis to testify as an expert. In support of his argument, Barnett cites a 1988 court of appeals opinion which was vacated on motion for rehearing. This constitutes no authority in support of this issue. *See Kang v. Hyundai Corp. (U.S.A.),* 992 S.W.2d 499, 503 (Tex.App.-Dallas 1999, no pet.); TEX.R.APP. P. 38.1(f),(h) (providing that brief must clear and concise argument for contentions made *with appropriate citations to authorities* ). Failure to cite any authority constitutes a waiver of the alleged error. *Kang,* 992 S.W.2d at 503. We overrule his fifteenth issue.

▮▮▮ In his sixteenth issue, Barnett claims the evidence is legally and factually insufficient to support the jury's award of damages. Barnett first complains that the debt the Lewises incurred is not an appropriate measure of damages and that there is no evidence he "caused" the debt. Barnett cites no authority for his assertion that a debt cannot constitute a measure of damages, nor does he analyze why the Lewises' debt could not constitute damages. We conclude this issue is inadequately briefed. *See Kang,* 992 S.W.2d at 503; TEX.R.APP. P. 38.1(f)-(h).

▮▮▮ Moreover, there is ample evidence in the record that the Lewises incurred substantial costs in connection with the Project. Lewis testified he paid Barnett $30,000 up front to begin on the Project. Lewis testified that NTGA decided not to renew its lease in reliance of Barnett's representations that the Project would be

done in six months. Because Barnett did not complete his work as he promised and the Project took longer than Barnett represented, NTGA had no place to go when its lease expired. Barnett then arranged for NTGA to sublet a rental property he leased. Because the site had not been finished out, the Lewises paid for substantial improvements to the property, between $50,000 to $60,000 for heaters, air conditioning, bathrooms, plumbing, garage doors, and electricity. After moving into the leased site, they discovered the facility was not adequate for their needs, including not having sufficient parking. The number of students dropped from 1400 to 500 hundred students. Barnett ultimately locked NTGA out of the leased site, and the Lewises were prevented from taking some equipment, all the heaters, air conditioners, and the other improvements. Others invested in the Project, and the Lewises owed them as well.

Wanda testified she prepared the debt schedules detailing the amounts owed by NTGA, NTC Lewis, David, and Wanda. The schedules, indicating amounts owed in connection with the Project, were admitted without objection. Wanda testified the schedules accurately reflect the debt owed by NTGA, NTC Lewis, David, and herself in connection with the Project. She testified that Barnett knew the Lewises were investing money of their own into the Project in addition to the construction loan. She testified Lewis's parents invested in the Project and "lost their whole retirement money." Barnett did not object to the admission of the schedules. On cross-examination, Barnett did not question Wanda on or otherwise challenge the preparation or content of the debt schedules.

We conclude the above detailed evidence, admitted without objection, constitutes some evidence to support the jury's findings on damages. Therefore, Bar-

nett's legal sufficiency challenge fails. And, after reviewing the entire record, we cannot conclude the evidence supporting the jury finding on damages is so weak as to be clearly wrong and unjust. His factual sufficiency challenge fails as well.

Next, Barnett asserts that Lewis's testimony regarding lost profits was insufficient to support such an award. We disagree. What evidence constitutes reasonably certain evidence of lost profits is a fact intensive determination. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). "As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Holt Atherton*, 835 S.W.2d at 84.

Barnett cites language from *Holt Atherton Industries, Inc.* in support of his argument that Lewis could not testify. In that case, the plaintiff testified he lost $200,000 as "a result of the defendant keeping the [bull]dozer for eight months." The supreme court concluded this solitary statement was legally insufficient to support an award for lost profits because it did not provide any indication of how the plaintiff determined what his lost profits were. *Holt Atherton*, 835 S.W.2d at 84. In contrast, in this case, Lewis testified he is a gymnastics instructor and teacher. He and Wanda owned and operated NTGA for three years before contracting with Barnett. During those three years, the business expanded significantly, increasing from twenty-four students to fourteen hundred students. The business was profitable, earning $106,000 in profit in 1997. Lewis testified that, in the terms of growth of the business profitability and the growth in Coppell, his expectation for profits after 1997 was from $150,000 to $180,000 per annum. He believed it to be a reasonable, if not conservative, estimate

in light of the growth of Coppell and the existing business.

In contrast to the testimony in *Holt Atherton Industries, Inc.,* Lewis's testimony demonstrates he is familiar with the business and that he based his estimate on the trend in the industry and the specific area where the business was located. We conclude Lewis's testimony is some evidence to support the jury's findings. Moreover, after reviewing the entire record, we cannot conclude the evidence supporting the jury finding is so weak as to be clearly wrong and unjust.

▄▄ The remaining issues raised under this point, that the evidence is legally and factually insufficient to support the jury's award of damages to (i) NTGA for breach of contract and (ii) appellees for negligent misrepresentation, fraud, breach of warranty, and violations of the DTPA are inadequately briefed. We decline to search a voluminous record for evidence in support of Barnett's contentions, and we decline to make his arguments for him.[3] We overrule Barnett's sixteenth issue.

### NTC's LIABILITY

In his final issue, Barnett contends that because NTC is CNTC's general partner, NTC is liable for CNTC's debt. Having concluded CNTC is not liable to Barnett on any of his causes of action, we need not address Barnett's final issue. *See* TEX. R.APP. P. 47.1; *Campbell v. Kosarek,* 44 S.W.3d 647, 650 (Tex.App.-Dallas 2001, pet. denied) (concluding that because courts have no jurisdiction to issue advisory opinions, it would be improper to discuss issues that were "advisory in na-

ture"). We overrule Barnett's final issue. In light of our disposition of Barnett's issues, we need not address appellees' contingent issues.

We affirm the trial court's judgment.

---

**3.** Moreover, his complaint regarding breach of contract damages is moot; the trial judge did not enter judgment on any of appellees' breach of contract claims. And his complaint that mental anguish damages are not recoverable under the DTPA is waived; Barnett did

not address this issue or object to it in the trial court and raises it for the first time on appeal. *See In re A.V.,* 113 S.W.3d at 358; *Payne,* 838 S.W.2d at 241; *In re J.W.,* 113 S.W.3d at 613.