REVERSE and REMAND; Opinion issued November 7, 2012



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

No. 05-11-00692-CV

AUTOGAS ACQUISITIONS CORPORATION and
AUTOGAS SYSTEMS, INC., Appellants

V.

DANA KELMAN, Appellee

On Appeal from the 219th Judicial District Court
Collin County, Texas
Trial Court Cause No. 219-03718-2008

# OPINION

Before Justices Morris, Francis, and Murphy
Opinion By Justice Morris

In this appeal, AutoGas Acquisitions Corporation and its parent company AutoGas Systems, Inc. challenge the trial court's summary judgment in favor of Dana Kelman. Kelman sued on an alleged severance agreement he entered into with his boss, John Cullen, AGA's president and chief operating officer. Because there are genuine issues of material fact with respect to whether Cullen had the authority to bind AGA and AGS to the alleged agreement he made with Kelman, we reverse the summary judgment and remand the cause to the trial court for further proceedings.

I.

In 2005, AutoGas Systems, Inc. created AutoGas Acquisitions Corporation as a wholly-

owned subsidiary to acquire the assets of Centego Marketing.[1] At all relevant times, G. Randolph Nicholson was the president, chief executive officer, and member of the board of directors of AGS. Nicholson was also the chief executive officer of AGA and chairman of its board of directors. John Cullen was the president of Centego at the time of the acquisition and became president and chief operating officer of AGA. Cullen was also appointed to AGA's board of directors and named an executive vice president of AGS. Dana Kelman was the director of finance for Centego and assumed that position for AGA.

The events underlying Kelman's claims arose after AGS began negotiations to merge AGA with another entity, Excentus, in late 2007 and AGA's sole customer terminated its contract with AGA. According to Cullen, in January 2008, he created a severance plan for seven AGA employees, including Kelman and himself. In addition to a lump sum payment based on years of service and a payment for unused paid time off, the severance plan included a stay-on bonus and a collection commission for Kelman and another employee, Roberta Frodhardt. Cullen's severance plan projected a last day of business for AGA, barring a sale or merger, as July 18, 2008. According to the plan, Cullen, Kelman, and Frodhardt would be terminated from AGA on that same date. Cullen then submitted the plan to Nicholson as a spreadsheet attached to an email. Cullen states that Nicholson's only objection to the plan was severance payments based on Centego's policy of two weeks' salary for each year of service. Cullen indicated that Nicholson requested the severance payments be based on AGS's policy of one week's salary for each year of service. Cullen asserts that he made this change and then entered into the severance agreement with Kelman and the other employees as memorialized in the revised spreadsheet.

---

[1] AGA then began doing business as Centego Marketing.

Nicholson substantially contradicted Cullen's version of events. Specifically, Nicholson testified that he rejected Cullen's emailed proposal as inconsistent with previous severance packages offered by AGS and as unnecessary because there was no planned reduction in force.[2] Nicholson said that he did not approve of the plan for commissions, stay-on bonuses, or reimbursement for time off. He noted that these items were not normally paid by AGA or AGS and would not have been approved by the AGA board or AGS's compensation committee, which considered all aspects of compensation for AGS and AGA.[3] Nicholson further testified that Cullen knew compensation changes and bonuses had to be approved by the compensation committee because they discussed the matter many times during Cullen's employment. Nicholson additionally indicated that neither the compensation committee nor the AGA board approved a severance plan for layoffs at AGA. He also denied that Cullen had any authority on behalf of AGA to make agreements such as the one alleged by Kelman.

Nevertheless, in April 2008, three employees named on Cullen's spreadsheet were terminated on the dates listed and received the severance amount and unused paid time off indicated on the spreadsheet. AGA did not cease business on July 18, however, and Kelman and the others scheduled for termination on that date continued as employees of AGA.[4] Kelman did receive the $21,000 stay-on bonus indicated on the spreadsheet.

On August 26, Kelman demanded a collections commission of $52,373.61 based on his

---

[2] Nicholson also indicated that no layoffs were anticipated for 2008 and that the discussions between him and Cullen "about a contingency plan dealing with severance were in the context of those employees that he thought might be laid-off if there was a reduction in force. It was never discussed that 'severance' was guaranteed." Nicholson also stated that AGS always retained the right to refuse to pay severance and did not pay it to employees who resigned or were terminated for cause.

[3] Nicholson indicated that he did not know that Cullen's spreadsheet contained more than one page. He also contends that Cullen never sent him a revised spreadsheet with payments based on one week's salary for each year of service.

[4] Cullen and Kelman were part of a group negotiating to acquire AGA. After those negotiations failed in July of 2008, AGS resumed the negotiations to merge AGA with Excentus that first began in late 2007.

alleged agreement with Cullen. In response, Nicholson advised him that he never authorized a stay-on bonus or collection commission and instructed Cullen and Kelman not to disperse any compensation above monthly salaries. On September 2, Cullen was terminated from his position as president of AGA and removed from the board. Kelman was terminated from his position with AGA on September 3. According to Nicholson, after consulting with the board of directors, he terminated Cullen and Kelman for cause based on their attempts to thwart a proposed merger between AGA and Excentus and Kelman's payments of allegedly unauthorized stay-on bonuses to himself and another employee. AGA ultimately merged with Excentus.

Kelman filed this lawsuit to collect amounts he claims he is due under the severance agreement he made with Cullen. Kelman moved for summary judgment in his favor asserting that he conclusively established Cullen, as president and a member of AGA's board of directors, entered into an enforceable severance agreement with Kelman and that he was entitled to the amounts promised as damages plus attorney's fees. The trial court agreed and granted summary judgment in Kelman's favor on his claims for breach of contract, quantum meruit, and promissory estoppel.[5] The trial court rendered a final judgment awarding Kelman $93,670.53 in damages plus pre- and post-judgment interest. This appeal followed.

II.

AGA and AGS contend that there are fact issues relating to each element of Kelman's several causes of action and on their affirmative defenses that preclude summary judgment in this case. Among other things, they contend that the evidence did not establish conclusively that Cullen had authority to enter into a severance contract with Kelman on their behalf. In support of their position,

---

[5] The trial court denied Kelman's motion with respect to his claims for sworn account, fraud, misrepresentation, mental anguish, and exemplary damages.

—4—

appellants rely on evidence that Nicholson rejected Cullen's severance plan and the plan was never approved by the AGA board of directors or the compensation committee. They also contend that the payment of severance to some employees was not based on a severance agreement but a historical procedure that did not apply to employees that were terminated for cause.

Kelman acknowledges that the president of a company has no inherent powers by virtue of his office to bind the corporation except as to routine matters arising in the ordinary course of business. *See Capital Bank v. Am. Eyewear, Inc.*, 597 S.W. 2d 17, 20–21 (Tex. Civ. App.—Dallas 1980, no writ) (actual authority of president of corporation to contract upon company's behalf must be found in specific statutes or organic law of corporation, delegated from board of directors, implied from nature of officer's position, or from custom or from habit of doing business). He asserts, however, that as president, chief operating officer, AGA board member, and executive vice president of AGS, Cullen had implied authority to bind appellees to "routine severance agreements." Here, there was conflicting evidence of whether the purported agreement with Kelman was a routine matter arising out of the ordinary course of business. The record indicates that Cullen gave Nicholson, the chief executive officer of AGA, the spreadsheet for review and purportedly made the change that Nicholson requested, suggesting his plan was not a routine matter arising in the ordinary course of business. Moreover, there is evidence that Cullen knew compensation changes for AGA employees, specifically bonuses, required approval from a compensation committee. We cannot say that a severance agreement developed in anticipation of the winding up of the corporation's business and resulting in payments substantially higher than the employee's annual salary of $70,000 is a routine matter as a matter of law. Contrary to Kelman's contention, the fact that other employees may have been paid severance, including paid time off, in accordance with Cullen's spreadsheet is not conclusive evidence that Kelman's purported severance agreement was ordinary and routine.

Likewise, evidence that Kelman was retained to provide collection services using commissions when AGS acquired Centego is not conclusive evidence that the purported severance agreement was a routine matter arising in the ordinary course of business. Cullen's vague testimony that he entered into contracts on behalf of AGA without any evidence about the nature of these contracts is simply insufficient to establish as a matter of law that the purported severance agreement with Kelman was within his authority as president, chief operating officer, and director of AGA.

Kelman additionally asserts that the summary judgment evidence established conclusively that Cullen had apparent authority to bind appellants to the severance contract. The test in determining the question of apparent authority is whether there is such conduct on the part of the principal as would lead a reasonably prudent person using diligence and discretion to believe that the agent had authority to act for the principal. *See Anchor Crane & Hoist Serv. Co. v. Sumrall Personnel Serv., Inc.*, 620 S.W.2d 653, 654 (Tex. Civ. App.—Dallas 1981, no writ) (citing *Chastain v. Cooper & Reed*, 257 S.W.2d 422, 427 (Tex. 1953)). Apparent authority arises either from a principal knowingly permitting an agent to hold himself out as having authority or from a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority. *Gaines v. Kelly*, 235 S.W.3d 179, 182–83 (Tex. 2007). After reviewing the record before us, we conclude that there is a fact issue with respect to whether Cullen had apparent authority to contract with Kelman for the severance agreement.

In support of his position that Cullen had apparent authority, Kelman relies on the following "undisputed" evidence: (1) After Centego was purchased by AGA, all employment operations, policies and salaries, including accounting records, payroll, and benefits, remained the same; (2) Cullen regularly spoke with Nicholson; (3) between January 2006 and August 2008, Nicholson and AGS's chief financial officer knew about payments made over monthly salaries and took no action

to stop the payments; (4) Cullen believed he had authority to enter contracts and meant for the agreement with Kelman to be binding; (5) Nicholson knew of Cullen's severance plan, objected to the first version, and ultimately approved a version based on AGS's policy of one week's salary per year of service; and (6) AGS knew employees had been terminated and paid in accordance with Cullen's spreadsheet.

We first note that appellees disputed many of the facts cited by Kelman. Among other things, there was evidence that Nicholson rejected Cullen's severance plan as unnecessary and inconsistent with AGS policy and never intended it to be a binding agreement with AGA employees. Moreover, many of the acts Kelman relies upon to establish Cullen's apparent authority are acts or statements attributed to Cullen rather than appellees. While some of the evidence Kelman presents may support a finding that Cullen had apparent authority to enter into a severance agreement with him, it is not conclusive proof on the issue. Significantly, there was no evidence that Cullen entered into severance agreements like Kelman's, or any severance agreement, when he was president of Centego or before he submitted the January 2008 proposal. In fact, there was no detailed evidence of the types of contracts Cullen entered into on behalf of Centego or AGA. Likewise, there is no evidence that AGS or AGA knowingly permitted Cullen to enter into these alleged severance contracts with AGA empoylees on their behalf. To the contrary, there is evidence suggesting that appellants were unaware that Cullen had entered into severance contracts. The remaining evidence upon which Kelman relies does not establish Cullen's apparent authority to bind AGA as a matter of law. For instance, the fact that Cullen spoke regularly to Nicholson and Nicholson made a change to Cullen's initial plan might suggest Cullen did not have apparent authority to enter into the severance contracts. Because the evidence did not conclusively establish Cullen had apparent authority to enter into the severance agreement with Kelman on behalf of AGA, summary judgment on Kelman's

breach of contract claim was improper.

The trial court also granted summary judgment on Kelman's quantum meruit and promissory estoppel claims. Generally, a party may not recover under quantum meruit or promissory estoppel when there is a valid contract covering the services furnished. *See In re Kellogg Brown and Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (quantum meruit); *Barnett v. Coppel N. Tex. Court, Ltd.*, 123 S.W.3d 804, 825 (Tex. App.—Dallas 2003, pet. denied) (promissory estoppel). As noted above, however, the question of whether a valid contract exists between Kelman and appellants is an issue that has yet to be determined in this case. Accordingly, the trial court's summary judgment on quantum meruit and promissory estoppel was also improper.

We reverse the trial court's summary judgment and remand the cause to the trial court for further proceedings.

JOSEPH B. MORRIS
JUSTICE

110692F.P05

—8—



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

AUTOGAS ACQUISITIONS
CORPORATION and AUTOGAS
SYSTEMS, INC., Appellants

No. 05-11-00692-CV    V.

DANA KELMAN, Appellee

Appeal from the 219th Judicial District Court
of Collin County, Texas. (Tr.Ct.No. 219-
03718-2008).
Opinion delivered by Justice Morris,
Justices Francis and Murphy participating.

    In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for further proceedings. It is
**ORDERED** that appellants AutoGas Acquisitions Corporation and AutoGas Systems, Inc.
recover their costs of this appeal from appellee Dana Kelman.

Judgment entered November 7, 2012.

JOSEPH B. MORRIS
JUSTICE