Opinion filed July 11, 2024.



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00117-CV

_____

### ALLIE JARAMILLO, Appellant

### V.

### CITY OF ODESSA ANIMAL CONTROL, Appellee

**On Appeal from the County Court at Law**
**Ector County, Texas**
**Trial Court Cause No. CCL-22937**

### M E M O R A N D U M   O P I N I O N

Appellant, Allie Jaramillo, proceeding pro se, appeals the trial court's order requiring that her dogs be euthanized pursuant to Section 822.042(e) of the Texas Health and Safety Code. The trial court found that Appellant failed to comply with the requirements that apply to the owner of a "dangerous" dog. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.042 (a), (e) (West Supp. 2023). On appeal, Appellant

asserts that the trial court (1) lacked subject-matter jurisdiction to hear this case, (2) violated her constitutional right to due process, (3) erred when it concluded that her dogs were "dangerous" under the terms of the controlling statute, and (4) erred when it determined that she failed to comply with the statutory requirements that are applicable to the owner of a "dangerous" dog. We affirm.

## I. *Factual Background*

On December 8, 2022, Appellant's dogs escaped from their enclosure on Appellant's property and attacked several teenage victims. Upon arriving at the scene, Appellant identified herself as the owner of the dogs and signed owner-surrender forms, thereby releasing ownership of each animal to Appellee, the City of Odessa Animal Control. Appellee filed four "Report of Potentially Dangerous Dog" forms and requested that a determination of the dogs' dangerousness be set for a hearing before the municipal court. At this hearing, the municipal court ordered Appellant to comply with the applicable requirements of Section 822.042—requirements that apply to owners of dangerous dogs—before the dogs could be returned to her.

After more than eleven days had elapsed, the municipal court set a hearing to determine whether the dogs should be euthanized or returned to Appellant; the release of the dogs to Appellant was contingent on her compliance with the municipal court's previous order. *See* HEALTH & SAFETY § 822.042(e). There, the municipal court found that Appellant was aware that she was the owner of "dangerous" dogs because her dogs had engaged in multiple, unprovoked attacks outside their enclosure. Additionally, the municipal court determined that more than thirty days after Appellant's awareness of this circumstance, she failed to comply with the applicable owner requirements. *See id.* § 822.042(a). As a result of her noncompliance, the municipal court ordered that the dogs be euthanized. *See id.*

§ 822.042(e). Appellant subsequently appealed the municipal court's order to the county court at law, which affirmed the municipal court's findings. This appeal followed.

## II. *Analysis*

Appellant is a pro se appellant. Therefore, we construe her brief liberally. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Aaron v. Fisher*, 645 S.W.3d 299, 312 (Tex. App.—Eastland 2022, no pet.). Nevertheless, Appellant is still held to the same standards as any licensed attorney and is required to comply with all applicable rules of procedure. *Mansfield State Bank*, 573 S.W.2d at 184–85; *Aaron*, 645 S.W.3d at 312. We may not consider evidence that is not included in the appellate record or factual assertions that appear solely in the appellate briefs that were not presented to the trial court for determination. *See* TEX. R. APP. P. 34.1; *Perry v. S.N.*, 973 S.W.2d 301, 303 (Tex. 1998). Therefore, even with a liberal construction, we will only address the issues that Appellant has preserved for our review. *See* TEX. R. APP. P. 33.1.

### A. *Municipal Court Jurisdiction*

In her first issue, Appellant claims that the municipal court lacked subject-matter jurisdiction to hear and decide the case.

Before a court may decide a case, it is essential that the court possess subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Whether a trial court has subject-matter jurisdiction over a case is a question of law that we review de novo. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)); *Ector Cnty. v. Breedlove*, 168 S.W.3d 864, 865 (Tex. App.—Eastland 2004, no pet.).

Although a municipal court's jurisdiction is generally limited to criminal matters, it also has jurisdiction to consider certain civil disputes that involve dangerous dogs. *In re United Services Auto. Ass'n*, 307 S.W.3d 299, 302 n.1 (Tex. 2010). Texas law specifically authorizes municipal courts to determine whether a dog is dangerous and whether a dangerous dog's owner complies with the applicable statutes. *See* HEALTH & SAFETY § 822.042(c), (g)(2).

Therefore, the municipal court had subject-matter jurisdiction to consider and decide this dispute. Accordingly, Appellant's first issue is overruled.

B. *Due Process*

In her second issue, Appellant claims that the trial court violated her constitutional right to procedural due process.

Notice is "[a]n elementary and fundamental requirement of due process." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The United States Constitution's Due Process Clause and the Texas constitution's Due Course of Law Clause require that adequate procedural due process be afforded to all parties to a judgment, which includes notice of trial court proceedings. *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 188–89 (Tex. 2022). Such notice must be "reasonably calculated, under all the circumstances, to apprise [all] interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. That opportunity "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). When parties are not afforded a meaningful opportunity to be heard, "the remedy for a denial of due process is due process." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 933 (Tex. 1995).

Appellant asserts that Appellee's failure to follow the procedures outlined in Section 822.0421(a) violated her right to due process. Section 822.0421(a) outlines

4

the procedures that an animal control authority should follow when investigating incidents of this nature and later determining whether a dog is dangerous. *See* HEALTH & SAFETY § 822.0421(a) (West 2019). However, Section 822.0421(a) is only applicable in the event that a person *reports* an incident involving a dog attack; the animal control authority may then investigate and determine whether the dog(s) meet the statutory definition of "dangerous dog." *See* HEALTH & SAFETY § 822.042(g)(3).

Section 822.042(g) defines how a person becomes aware that she is the owner of a dangerous dog. They are when the owner: (1) "knows of an attack" as described by Section 822.041(2)(A) or (B); (2) receives notice that a court has found that the dog is a "dangerous dog" under Section 822.0423; or (3) is informed by the animal control authority that the dog is dangerous under Section 822.0421. *Id.* § 822.042(g)(1)–(3). Although any subsection of Section 822.042(g) would apply here, Appellant only complains that Appellee failed to comply with subsection (g)(3). However, Appellant knew that her dogs had committed unprovoked acts in the manner described in Section 822.041(2)(A) and (B). At the scene of the attacks, Appellant signed owner-surrender forms for the dogs that were involved in the unprovoked attacks. In her brief, Appellant concedes that she understood the basis of the allegations concerning her dogs, although she disagrees that this incident constituted an unprovoked attack. Therefore, the record shows that Appellant was aware on the incident date, that she was the owner of dangerous dogs under Section 822.042(g)(1).

Any one of the three alternatives listed under Section 822.042(g) is sufficient to establish that a person has "learned" that she is the owner of a dangerous dog. *See id.* Therefore, Appellant's complaint that her right to due process was violated by Appellee's noncompliance with Section 822.0421(a) is without merit.

The controlling statute clearly sets forth the required procedures. After a person "learns" that she is the owner of a dangerous dog, she must comply with the requirements of Section 822.042(a) within the following thirty days. HEALTH & SAFETY § 822.042(a). An owner who does not comply with the requirements of subsection (a) shall deliver the dog(s) to the animal control authority no later than thirty days after she "learns" that she is the owner of a dangerous dog. *Id.* § 822.042(b). The municipal court shall order the dog(s) to be euthanized if the owner has not complied with subsection (a) on or before the eleventh day after the date the dog(s) are seized or delivered to the animal control authority. *Id.* § 822.042(e).

Additionally, Appellant argues that she did not receive notice of the hearing to determine whether her dogs would be euthanized and thus did not have an opportunity to "defend [her] property." The record shows otherwise. Although Appellant signed owner-surrender forms, she subsequently notified Appellee that she intended to withdraw her signature, and the municipal court provided her with proper notice of future proceedings in accordance with the statute. *See* HEALTH & SAFETY § 822.0423(b)(1). Further, when Appellant claimed that she had not received proper notice of a hearing, the municipal court rescheduled it to ensure compliance with due process. The record shows that Appellant received notice of multiple hearings from the municipal court and that she had ample time and opportunities to show that she complied with the applicable statute prior to the municipal court's determination that the dogs should be euthanized. Similarly, Appellant had the opportunity to present her arguments, raise objections, and present evidence when she appealed the municipal court's order to the county court at law.

Appellant was provided adequate notice of the necessary proceedings and she had a meaningful opportunity to be heard. Thus, Appellant's right to due process was not violated as she claims. Accordingly, Appellant's second issue is overruled.

C. *"Dangerous" Dogs Finding*

In her third issue, Appellant argues that the municipal court erred when it determined that her dogs were "dangerous" under the terms of the statute.

We review questions of statutory interpretation de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). "When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *see* TEX. GOV'T CODE ANN. § 312.005 (West 2013). We begin by examining the plain meaning of the statute's language. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389–90 (Tex. 2014). We derive legislative intent from the statute as a whole rather than from isolated portions of it. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). That is, we read statutes contextually to give effect to every word, clause, and sentence because every word and phrase is presumed to have been used intentionally, with a meaning and a purpose. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." GOV'T § 311.011; *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017).

"If the statute is clear and unambiguous, we must read the language according to its common meaning 'without resort to rules of construction or extrinsic aids.'" *Crosstex Energy Servs.*, 430 S.W.3d at 389 (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)); *but see* GOV'T § 311.023 (permitting courts to consider legislative history and other construction aids regardless of ambiguity). And if a

statute is unambiguous, we adopt the interpretation that is supported by the statute's plain language unless such an interpretation would yield an absurd result. *TGS-NOPEC*, 340 S.W.3d at 439 (citing *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170, 177 (Tex. 2004)). "A statute is ambiguous if its words are susceptible to two or more reasonable interpretations and we cannot discern legislative intent from the language alone." *Fort Worth Transp. Auth.*, 547 S.W.3d at 838. "If the statute is clear and unambiguous, we apply its words according to their common meaning in a way that gives effect to each word, clause, and sentence." *State By & Through City of Dallas v. Dallas Pets Alive*, 566 S.W.3d 914, 916 (Tex. App.—Dallas 2018, pet. denied) (citing *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008)).

Section 822.041 provides that:

> (2) "Dangerous dog" means a dog that:
>
> > (A) makes an unprovoked attack on a person that causes bodily injury and occurs in a place other than an enclosure in which the dog was being kept and that was reasonably certain to prevent the dog from leaving the enclosure on its own; or
> >
> > (B) commits unprovoked acts in a place other than an enclosure in which the dog was being kept and that was reasonably certain to prevent the dog from leaving the enclosure on its own and those acts cause a person to reasonably believe that the dog will attack and cause bodily injury to that person.

HEALTH & SAFETY § 822.041(2). When we construe the plain and unambiguous language of Section 822.041(2), there is only one reasonable and logical interpretation—Appellant's dogs are "dangerous." The dogs escaped their enclosure and attacked, without provocation, five minors who were walking home from school. Appellant argues that the municipal court should not have found that each of her dogs were dangerous because the minor-victims only claimed that one of the dogs

8

bit them. Contrary to Appellant's argument, to be considered "dangerous" under the plain and unambiguous meaning of the statute, it is not necessary that a dog must have actually caused bodily injury to a person during the attack; rather, a person need only *reasonably believe* that the dog will attack him or her and cause bodily injury to that person during the attack. *See id.* § 822.041(2)(B). Such is the circumstance here. In this case, the minor-victims each described (1) being attacked by a "pack of dogs" and (2) their fear of being injured or harmed by the dogs during the attack. There is no evidence in the record to the contrary.

Because the minor-victims were attacked by Appellant's dogs and the minors reasonably believed that they would suffer harm or bodily injury as a result of the attack, the dogs are "dangerous" under the controlling statute and neither the municipal court nor the county court at law erred in so finding. Accordingly, Appellant's third issue is overruled.

D. *Compliance with Section 822.042*

In her fourth issue, Appellant asserts that the municipal court erred when it found that she failed to comply with the statutory requirements that are applicable to the owner of a "dangerous" dog because she was unaware that her dogs were dangerous.

Section 822.042 provides in relevant part:

> (g) For purposes of this section, a person *learns* that the person is the owner of a dangerous dog when:
>
> > (1) the owner knows of an attack described in Section 822.041(2)(A) or (B);
>
> > (2) the owner receives notice that a justice court, county court, or municipal court has found that the dog is a dangerous dog under Section 822.0423; *or*
>
> > (3) the owner is informed by the animal control authority that the dog is a dangerous dog under Section 822.0421.

9

HEALTH & SAFETY § 822.042(g)(1)–(3) (emphasis added).  The question before us is whether Appellant's knowledge of the attacks, without more, is sufficient to prove that she *learned* that her dogs were dangerous, thus triggering her compliance with the statutory owner requirements.  Appellant argues that she could not have known she was the owner of dangerous dogs because no one informed her of any declaration of dangerousness or of any regulations that pertain to dangerous dogs.  She further urges that knowledge of the attack is not enough and that she was entitled to notification from either the municipal court or Appellee pursuant to Section 822.042(g)(2) and (3).  We disagree.

Because Section 822.042(g) is phrased in the disjunctive, it does not require that each subsection of the statute must apply before an owner of a dog is deemed to have learned or become aware of their dog's dangerousness; rather, only one subsection must be applicable to invoke Section 822.042(g).  *See MBank Abilene, N.A. v. Westwood Energy, Inc.*, 723 S.W.2d 246, 251 (Tex. App.—Eastland 1986, no pet.) ("The general rule of statutory construction is that the words 'and' and 'or' are not interchangeable.") (citing *Bd. of Ins. Comm'rs of Tex. v. Guardian Life Ins. Co. of Tex.*, 180 S.W.2d 906, 908 (Tex. 1944)); Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives.").  Therefore, in this case, notification from either the municipal court or Appellee was not required because Appellant *learned* that she was the owner of dangerous dogs when Appellee informed her of her dogs unprovoked attacks.

Appellant also attested and acknowledged that her dogs were dangerous when she signed the owner-surrender forms at the scene.  Although Appellant later intended to withdraw her signature for purposes of retaining ownership of the dogs, by her signature she acknowledged that the dogs had "bitten, scratched, or attacked

10

[someone] in the last ten (10) days." Because Appellant's dogs, as she acknowledged and conceded on the date of the attacks, were outside their enclosure and attacked, without provocation, the minor-victims, we conclude that Appellant was aware of and thus "learned" that she was the owner of dangerous dogs. *See* HEALTH & SAFETY § 822.042(g)(1). As a result, she was required to comply with the requirements that are applicable to such owners. Because she did not, the municipal court and the county court at law did not err when they ordered that Appellant's dogs be euthanized. Accordingly, Appellant's fourth issue is overruled.

### III. *This Court's Ruling*

We affirm the order of the trial court.

W. STACY TROTTER
JUSTICE

July 11, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.